Skobis and another vs. Ferge and others.

SKOBIS and another, Respondents, vs. FERGE and others, Respondents, and THE BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN, Appellant.

*February 4 — February 21, 1899.*

*Assignment of chose in action: Liability of debtor to assignee: Consent: Partial assignments: Priority: Regents of university: Contracts: Oral modifications.*

1. A contractor for work on a building procured from the architects several certificates of the amounts which he had earned in different departments of the work, in advance of the time fixed by the contract for payment, and delivered them to subcontractors for those departments, with intent thereby to assign the corresponding portions of the fund to which he was to become entitled. *Held,* that there was in equity an effectual assignment as between the parties and as against the contractor's assignee for the benefit of creditors under a voluntary assignment subsequently made.

2. General information that his creditor is likely to borrow on the credit of a debt, or that he has in other instances borrowed upon it, or a mere suspicion that the creditor might have made an assignment to others, does not render a debtor liable to an assignee in respect to payments made to the original creditor before receiving exact and specific notice of the assignment.

3. The assent of the debtor is essential to the existence of a direct liability to the assignee of a part of a fund in the hands of one not a banker.

4. The chairman of a special committee of the board of regents of the state university charged with the general direction of certain work has no authority, unless the same has been given him by the board, to modify the written contract which the board has authorized in respect to such work.

5. A conversation between a contractor and the chairman of a special committee of the board of regents which has general direction of the performance of the contract is not binding on the board to vary the terms of the written contract thereafter formally executed.

6. No verbal explanations or assurances by individual members of the board of regents could bind the board to an agreement either to pay or to guarantee the amount of a subcontract, nor subject the public moneys under its control to liability in excess of that authorized by the board.

7. Where the contractor for work on a building for the board of regents, having obtained from the architects several certificates of amounts earned, assigned them at the same time to subcontractors to apply on existing debts to the latter, and the board of regents did not consent to any of the assignments so as to become liable to the assignees, the equities of the assignees are equal, irrespective of any priority in giving notice to the board.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

In March, 1896, the *Board of Regents of the University of Wisconsin,* having decided to make certain additions and repairs to Ladies' Hall, entered into a contract with Thomas R. Bentley, of Milwaukee, for the construction thereof, to be completed by January 1, 1897, for the sum of $50,742, to be paid, $5,000 on the 1st of August, 1896; $10,000 on the 1st of October, 1896; and the balance between February 1 and March 1, 1897; "all payments to be made upon written certificates of the architects to the effect that such payments have become due." Before the making of said contract, the board of regents appointed a subcommittee, designated as the Ladies' Hall committee, which continued throughout the performance of the contract, and had general direction thereof. John W. Bashford of Hudson was chairman of that committee. After the contract had been awarded by the board itself, and signed by the chairman of the executive committee, and taken to Milwaukee by Bashford, the contractor, Bentley, complained that the extreme postponement of payments would embarrass him, and requested that the architect might from time to time issue certificates of completion of parts of the work without regard to the contract dates of payment, which he could use in raising money and otherwise in carrying out the contract, to which, it is claimed, assent was given by John W. Bashford verbally. The contract was thereupon signed by Bentley, who at once entered actively upon the work of construction, and seems to have pushed the same with great

vigor, so that on May 25, 1896, the architects, Ferry & Clas, certified that he had become entitled to the payment of $3,000, payable as per contract August 1, 1896, and on July 2d certified that he was further entitled to the payment of $6,000, as per contract.    On August 31, 1896, Bentley again applied to the architects for certification of the amount earned, and the architects, at his request, issued to him five certificates, namely: One of $2,000, which varied from the ordinary certificates only in describing him as "contractor for iron work;" one of $450, which described him as "contractor for painting and glazing;" one of $1,800, which described him as "contractor for the plumbing and gas fitting;" one of $600, which described him as "contractor for the tin and galvanized iron work;" and one of $12,000, which described him, as did all of the others, as "contractor for an addition to and remodeling of Ladies' Hall."

Shortly after the issue of the five certificates on August 31st, viz. on or about September 1st, Bentley delivered the $2,000 certificate to the plaintiffs, Skobis Bros.; the $450 certificate to Thomas P. Nelson, who shortly afterwards assigned it to the defendants Rohde & Patek Bros.; the $1,800 certificate to William Owens; and the $600 certificate to Stephenson & Studeman, in consideration of sums owing them severally for work as subcontractors.    These transactions, it was found by the trial court, were intended as assignments of the several amounts of the certificates. Neither Skobis Bros. nor Stephenson & Studeman made any attempt to notify the board of their assignments until after final settlement had been made with Bentley, nor until after his failure.    Rohde & Patek Bros., on October 10th, gave written notice to the secretary of the board of the assignment to them.    The secretary immediately replied, refusing to recognize them, and saying that payments would be made only to Bentley.    The evidence is indefinite; but the court

finds that, within a few days after receiving said certificate, *Owens* duly presented the same to Riley, the secretary of the board, notified him that he held the same, and thereafter, and prior to February, 1897, informed B. J. Stevens, a member of said board and chairman of the executive committee, that he held said certificate; and that on or about February 7, 1897, he again presented said certificate to said Riley, secretary, who informed him that the said certificate would be paid, and also that Bentley's bills for estimates had been allowed, and "I better see him." The fact of presentation to Riley soon after receipt of the certificate, as found by the court, has very doubtful, if any, support in the evidence, but, in the view taken of this case, it is not material to the. decision. It is also claimed by *Mr. Owens* that he entered into the subcontract with Bentley to do the plumbing and gas-fitting upon a guaranty by the board of regents that they would see that he was paid. The evidence on that subject appears in the opinion.

Payments were made to Bentley from time to time, by resolutions of the executive committee of the board of regents, as follows: On August 3d, $9,000; September 24th, $2,000; October 5th, $8,000; November 2d, $11,000; December 8th, $1,791.65; and February 4th, $18,000, the last payment being made after the full completion of the work, and leaving a balance unpaid, of combined contract price and extras, of $2,833.69. On February 11, 1897, Bentley made a voluntary assignment for the benefit of creditors to defendant *Ferge*.

Much evidence was offered and received to establish that Bashford knew, before the contract was entered into, and that Riley, the secretary, and perhaps some other members of the board, had knowledge, in the course of the performance of the contract, that Bentley was borrowing money on the faith of what he was to receive on the contract, and was using the certificates from the architects, declaring the

amount which had been earned, as an aid in so doing; but there is no evidence tending to show that any of the board of regents had notice of any purpose on the part of Bentley to assign portions of the moneys coming due on the contract to any of these subcontractors.

The defendant *Ferge* claims that the transactions between Bentley and the several holders of said certificates were not such as to work an equitable, or any, assignment of the funds in the hands of the board of regents, and that therefore he, as assignee, is entitled to said balance of $2,833.69. The several holders of said certificates contend that said transactions did constitute equitable assignments to them, and that thereby the defendant the board of regents became indebted to them for the amounts specified in said respective certificates. The defendant the board of regents contends both that said transactions were not sufficient to constitute assignments to the several holders thereof, and, further, that, even if so sufficient, the board of regents was chargeable with no liability to said assignees; and, after interpleading all of these various interests, it prayed that it might be allowed to deposit the balance of $2,833.69 in court, and be dismissed, with its costs. The court adopted substantially the contention of the holders of certificates, and rendered judgment against the board of regents in favor of each of them for the amounts of their respective certificates, with interest thereon from the 15th day of February, 1897, and for taxable costs. From these judgments, consolidated in one and aggregating $5,310.47, the board of regents brings this appeal.

The cause was first argued on November 26, 1898.

For the appellant there was a brief by *F. A. Geiger*, and oral argument by *Mr. Geiger* and *Mr. Geo. H. Noyes*. They argued, *inter alia*, that the transfer of the architects' certificates did not amount to an equitable assignment of portions of the proceeds of the contract to the holders. The assignor

still retained control of the fund.   *Christmas v. Russell*, 14 Wall. 69; *Dirimple v. State Bank*, 91 Wis. 601; *Baillie v. Stephenson*, 95 Wis. 500; *Cowperthwaite v. Sheffield*, 3 N. Y. 243.   If these subcontractors were equitable assignees, it was their duty, in order to protect their title to the funds, to give prompt notice to the regents.   Their failure to do so was gross and culpable negligence.   *Spain v. Hamilton's Adm'r*, 1 Wall. 604; 2 Pomeroy, Eq. Jur. §§ 695, 698, 702; Wade, Notice, § 435; *Judson v. Corcoran*, 17 How. 612; *Bank of Harlem v. Bayonne*, 48 N. J. Eq. 246; *Meghan v. Mills*, 9 Johns. 63; *Trustees of Union College v. Wheeler*, 61 N. Y. 88; *Van Keuren v. Corkins*, 66 N. Y. 77; *Loomis v. Loomis*, 26 Vt. 203.   The notice should be sufficiently precise to put the defendant fully on his guard as to the fact of such assignment, and he should have understood it.   *Renton v. Monnier*, 77 Cal. 450; *Crouch v. Muller*, 141 N. Y. 495; *Heermans v. Ellsworth*, 64 N. Y. 159; *Cahoon v. Morgan*, 38 Vt. 234; *Stoddard v. Gailor*, 90 N. Y. 579; *Beck v. Cole*, 16 Wis. 99.

For the respondents there were separate briefs by *McElroy & Eschweiler*, attorneys for *Skobis Bros.*, *Nath. Pereles & Sons*, attorneys for *Rohde & Patek Bros.*, and *R. M. La Follette* and *Gilbert E. Roe*, attorneys for *William Owens* and *Stephenson & Studeman;* and the cause was argued orally by *W. J. McElroy*, *C. F. Hunter*, and *Mr. Roe.*   They argued, among other things, that the transfer of the architect's certificates did constitute equitable assignments of portions of the funds, and that the regents had sufficient notice thereof. *Baillie v. Stephenson*, 95 Wis. 500; 6 Am. & Eng. Ency. of Law, 656; *Fairbanks v. Sargent*, 6 L. R. A. 475; *Williams v. Ingersoll*, 89 N. Y. 508; *Pass v. McRea*, 36 Miss. 143; *Kimball v. Donald*, 20 Mo. 577; *Garnsey v. Gardner*, 49 Me. 167; Wade, Notice, §§ 437, 438; *Hackett v. Martin*, 8 Me. 77; *Parker v. Kane*, 4 Wis. 16; *Commercial Bank v. Colt*, 15

Barb. 506; *Smith v. Smith*, 2 Cr. & M. 231; *Chapman v. Plummer*, 36 Wis. 263; *Pease v. Landauer*, 63 Wis. 20; *Arpin v. Burch*, 68 Wis. 619; *Lanigan's Adm'r v. Bradley & C. Co.* 50 N. J. Eq. 201; *Crouch v. Muller*, 141 N. Y. 495; *Union Iron Works Co. v. Kilgore*, 65 Minn. 497; *Lauer v. Dunn*, 115 N. Y. 405; *Helms v. Chadbourne*, 45 Wis. 60, 70; *Brinkman v. Jones*, 44 Wis. 498. The approval by the board of regents of these certificates amounted to an acceptance thereof, and they were bound to retain in their hands sufficient funds to meet them when presented. *Industrial Bank v. Bowes*, 165 Ill. 70; *Funk v. Babbitt*, 156 Ill. 408; *Meads v. Merchants' Bank*, 25 N. Y. 143; *Spring v. S. C. Ins. Co.* 8 Wheat. 268; *Cutler v. McCormick*, 48 Iowa, 406; *Garland v. Harrington*, 51 N. H. 409; *McCarthy v. Mt. Tecarte L. & W. Co.* 110 Cal. 687; *Chesnut Hill R. Co. v. Chase*, 14 Conn. 123; *Bartlett v. Pearson*, 29 Me. 9; *Cummings v. Fullam*, 13 Vt. 434; *Creighton v. Hyde Park*, 6 Ill. App. 272–274.

The following opinion was filed December 16, 1898:

DODGE, J. The court having reached the conclusion that the defendant the board of regents is not liable beyond the balance of $2,833.69 remaining in its hands and by its answer offered to be paid into court; also, that the defendant *Ferge* is not entitled to any part thereof; there remains the question how the fund should be apportioned among the four assignees, viz., the plaintiffs Skobis Brothers and the defendants Rohde & Patek Brothers, Stephenson & Studeman, and *William Owens*. This question, necessarily involved in directing final judgment, was not argued either in oral arguments or in the printed briefs. We have therefore concluded to order a reargument of the case upon that single question.

*By the Court.*— Ordered accordingly, that such reargument be set at the foot of the second assignment of the January, 1899, term.

The cause was reargued February 4, 1899.

*F. A. Geiger*, for the appellant.

For the respondents there were separate briefs by *McElroy & Eschweiler*, attorneys for *Skobis Bros.; Nath. Pereles & Sons*, attorneys for *Rohde & Patek Bros.;* and *R. M. La Follette* and *Gilbert E. Roe*, attorneys for *Owens* and *Stephenson & Studeman;* and the cause was argued orally by *C. F. Hunter*.

The following opinion was filed February 21, 1899:

Dodge, J.   1. The first question to be decided is whether the transactions had by Bentley with these several subcontractors were sufficient, as between themselves, to effect equitable assignments of portions of the fund to which he was to become entitled by the performance of his contracts.   "Any transaction between the contracting parties which indicates their intention to pass the beneficial interest from one to the other is sufficient for that purpose."   *Chapman v. Plummer*, 36 Wis. 265.   "It [the assignment], in the final analysis, all depends on the intention of the parties.   If they intended it to be an assignment of the fund, equity will so treat it. In order to constitute an assignment in equity of a debt or chose in action, no particular form is necessary.   Any order, writing, or act which makes an appropriation of the fund, amounts to an equitable assignment."   *Baillie v. Stephenson*, 95 Wis. 500–502.

The acts themselves are not in much doubt, but the inferences to be drawn from them as to the understanding and purposes of the parties are; but, being doubtful, we yield to the finding of the circuit court that the delivery of the certificates was intended by the parties to be effective as assignments.   This conclusion disposes adversely of the claim of the defendant *Ferge*, assignee for benefit of creditors of said Bentley, for he stands in the shoes of Bentley, and can claim no rights which Bentley could not have claimed at the time

of the assignment, February 11, 1897. *Hawks v. Pritzlaff*, 51 Wis. 160; *Pease v. Landauer*, 63 Wis. 20, 26; *S. L. Sheldon Co. v. Mayers*, 81 Wis. 627, 630.

2. The next and much more disputed question is whether or not the board of regents is liable to these assignees, or any of them. The authorities are overwhelming, and almost without dissent, that no assignment of a chose in action can have any effect upon the debtor or fund holder, or interfere with his dealing with the fund, until brought to his notice. *Spain v. Hamilton's Adm'r*, 1 Wall. 604; *Ward v. Morrison*, 25 Vt. 593; *Loomis v. Loomis*, 26 Vt. 198; *Schilling v. Mullen*, 55 Minn. 122; *Mowry v. Crocker*, 6 Wis. 326. The substitution of a new creditor is in derogation of the rights of the debtor, and was strictly prohibited by the ancient rules of the common law. It is only by relaxation of those rules, in deference to the convenience of trade, that such assignments have been recognized at all, and now enable a direct suit where the entire claim is assigned to one assignee, which, formerly in equity, can now be at law by virtue of such statutes as sec. 2605, Stats. 1898. *Nat. Exch. Bank v. McLoon*, 73 Me. 498; *Little v. Portland*, 26 Oreg. 235; *Chapman v. Plummer*, 36 Wis. 262, 266. The fact, however, of such substitution of a new creditor must, in order to make the debtor liable to the assignee, be brought home to the debtor with much exactness and certainty before he has paid the debt. The rule of notice to him is much more stringent than that which may defeat the title of a *purchaser* of a chose in action or of real estate. The latter is free to purchase or refuse to purchase as he chooses, and therefore it is his duty, before acting, to trace out any reasonable doubt and inform himself of the true facts as soon as anything arises to put him on inquiry. But the debtor is not so situated. He must pay to his original creditor when the debt is due, unless he can establish affirmatively that some one else has a better right. The notice to him, therefore, must be of so exact and specific

a character as to convince him that he is no longer liable to such original creditor, and to place in his hands the means of defense against him, or at least the information necessary to interplead the assignee. *Christmas v. Russell,* 14 Wall. 69, 84; *Brady v. Loring,* 70 Ill. App. 191; *In re Tichener,* 35 Beav. 317.

In no case could general information that his creditor was likely to borrow on the credit of the debt, or that he had in other instances borrowed upon it, nor any mere suspicion that he might have made assignment to others, alone place the debtor in the predicament of paying his original creditor, at the peril of being held liable to any one who might prove to be an assignee. The conversation between Bentley and Bashford, in Milwaukee, in which request was made for the issue of architects' certificates to be used in raising money, is claimed to have amounted to notice that Bentley expected to make assignments; but, even conceding such force to it, the regents could not thereby have been charged with such notice of any specific assignments as would hold them liable to an assignee under the rule just stated. Nor would the knowledge, if such they had, that Bentley had assigned other certificates to banks or others.

With reference to an assignment of part only of a fund in the hands of one not a banker nor bound in advance to consent to partial assignments, the weight of authority is in favor of a still more stringent rule in protection of the debtor. While the prohibition of the ancient common law against the assignability of claims, so as to substitute a new creditor, has been relaxed, so that now an assignee of the whole fund may, by virtue of the Code provisions that the party in interest shall sue, maintain an action at law directly against the debtor, the relaxation has not been extended so as to take away the protection of the other rule that a debt cannot, at the will of the creditor, without consent of the debtor, be split up, and several suits maintained thereon,

whether by assignment or otherwise. The debtor has a right to pay his debt *in solido*, and to refuse to be subjected to suits by several claimants; and no notice of an assignment of a part of a debt, no matter how complete in equity as between the assignor and assignee, can destroy this right of the original debtor without his consent. *Mandeville v. Welch*, 5 Wheat. 277; *James v. Newton*, 142 Mass. 366; *Bosworth v. Jacksonville Nat. Bank*, 64 Fed. Rep. 615; *Price v. The Elmbank*, 72 Fed. Rep. 610; *Leonard v. M., K. & T. R. Co.* 68 Mo. App. 48. The question has not been definitely presented in Wisconsin, but the intimation of the previous cases in this court is to the effect that the assent of the debtor is essential to the existence of direct liability to the assignee of part of a fund. *Leonard v. Burgess*, 16 Wis. 41; *Gundry v. Vivian*, 17 Wis. 436; *Pease v. Landauer*, 63 Wis. 20, 28.

Applying this rule to the case at bar, it is obvious that the fund holder, the board of regents, at the time of the final payment to Bentley, was under no liability to any of the assignees, unless to the assignee *Owens* by virtue of a special agreement claimed to exist in his behalf (which will be discussed later), for the reason that there had been no consent by the board to severance of the fund, or to liability to the individual assignees. True, it is apparently claimed by the plaintiffs and other assignees that the transactions between Bashford and Bentley in Milwaukee, before the signing of the written contract, had some such effect; such contention being predicated upon the argument that it was thereby agreed that the architects' certificates to be issued were to be given a sort of currency, to pass from hand to hand as Bentley might choose to use them; and the court finds that it was agreed that they should be issued upon the understanding that Bentley was to use them in raising money. We do not think either the evidence or the finding establishes even an attempted agreement to the extent claimed, as the certificates could well have been "used in raising

money " otherwise than by assignment of the amounts certified to be due therein. The solvency of the fund holder, the regents, was of course beyond question; and the fact of an indebtedness, of which the certificates were some evidence, was a good basis of credit on which Bentley might have borrowed, especially if his reputation for financial integrity was reasonably good, to the contrary of which nothing appears. Whatever may have been the terms of that conversation, however, it constituted no agreement, binding on the board of regents, varying the terms of the written contract formally signed by Bentley and by the chairman, under authority of the board. This defendant is not a mere private corporation, but is an instrument for performing one of the functions of the state government. Its powers are strictly limited by law, and all persons dealing with it have the same knowledge as its own members of the powers which it or any of its officers may exercise. The moneys which it handles are not corporate or private moneys, but moneys of the state of Wisconsin. No authority is shown to exist in Mr. Bashford to enter into any agreement which should modify the written contract the board had authorized. In the absence of such showing, no presumption or intendment can be entertained to support his authority. Further, the evidence discloses beyond dispute that all of the conversation upon which the above finding and argument are predicated took place before the signing of the written contract, and necessarily the latter must be conclusively taken to express the whole terms of the contract between the parties.

The moneys remaining in the hands of the regents, and offered to be paid in court, are more than sufficient to satisfy the claim of *Owens*, and therefore the question whether there was any binding contract with him, giving peculiar rights as against the defendant regents, is not material to this branch of the case. No obligation, duty, or equity, as against

the regents, is shown on behalf of any or all of the assignees which cannot be more than satisfied by the $2,833.69, which they tender into court. .The board cannot be held liable, therefore, beyond that balance.

After reaching this point, a reargument was ordered, and had, as to the priorities, if any, between the several assignees in the fund so to be paid into court.

It is claimed by defendants Rohde & Patek Bros. that they are entitled to priority, because they first gave notice to the regents. That notice was, however, immediately repudiated, and they were notified that the regents would pay only to Bentley. *Owens* claims priority both because he gave notice,— which need not be heeded, for the board made no consent to the assignment to him,— and also because of an agreement, which he claims to have had, either that the regents would pay him the amount of his subcontract, or that they guaranteed the payment thereof by Bentley. Both his testimony and the findings are quite ambiguous as to the terms of the agreement claimed to have been made, seemingly asserting both an original undertaking to pay him, and also an agreement to guarantee that Bentley would pay him. Their only support consists in *Owens's* own testimony, from which it appears that Bentley objected to a separate contract for plumbing, because he could not control the time of its performance, whereupon a conversation was had between Mr. Stevens, a member of the board, Riley, Bentley, and *Owens*. *Owens* says: " Then it was fixed that I should simply get the money through Mr. Bentley. I was given to understand that they would see me paid if I would take it through Mr. Bentley. I don't know who made the suggestion that they would fix things that way. It was one or the other. . . . The reason I made the contract with Bentley was because I was assured that I should be paid by the regents. I believe Mr. Stevens said so, though I ain't

sure he said it.  I believe it was one of the members of that committee.  ·.  .  .  The understanding was I was to take my money from Bentley."

The resolution adopted by the board awarded the entire contract to Bentley, on condition that he give the preference to *Mr. Owens*, provided *Owens* did the entire plumbing for $3,800; otherwise, Bentley could make any other arrangements therefor.  Thereafter *Owens* and Bentley entered into a written contract as follows: "I will furnish material, etc., for $3,800; gas fitting, $250, additional to above.  The above proposition is subject to the same conditions as the general contract entered into by the regents and Thomas R. Bentley.  Accepted April 22, 1896."  (Signed by *Owens* and Bentley.)  *Owens's* conduct also is wholly inconsistent with original liability of the board to him.  All of his applications for money pending the performance of the work were not to the regents, but to Bentley, who paid him $1,200 at one time, and $800 at another.  After obtaining the $1,800 certificate in controversy,— which, it will be observed, was not a promise to pay to any one, but a certificate that that amount of plumbing had been done under the contract,— he insisted on its transfer by Bentley to him.  As late as February, he was satisfied with the assurance that payment to Bentley had been ordered and he better see young Bentley, and, when Bentley made assignment for benefit of creditors, *Owens* made proof of his entire claim against his estate.

On the other hand, both Riley and Stevens contradict any such verbal agreement as is testified to, asserting that the transaction was merely an effort to secure for *Owens*, to whom they were apparently friendly, the subcontract for plumbing.

This evidence seems to us to fall far short of establishing any understanding even on *Owens's* part that the board assumed direct liability to him; but, whether that be so or not, the transactions related fail utterly to bind the regents

to any such undertaking as is claimed. The only act done by them was to award the entire contract to Bentley and authorize its signature by the chairman of the. executive committee. No verbal explanations or assurances made by individual members could bind this corporation to an agreement either to pay or to guarantee the amount of *Owens's* subcontract, nor subject the public moneys under its control to liability in excess of that authorized by the board.

While there is much conflict as to the rule governing successive assignments of an entire claim, some courts holding that the prior assignment in time is entitled to priority, while others hold that a subsequent assignee for value without notice gains priority by first notifying the fund holder, the holding as to partial assignments is, without much dispute, that notice to the debtor is ineffectual unless he consents — that it imposes upon him no duty or liability to the assignee. *James v. Newton,* 142 Mass. 366; *Pease v. Landauer,* 63 Wis. 20. In the present case, there seems, therefore, to be no superior equity in favor of any of the claimants. The board of regents did not consent to any of the assignments so as to become liable. They did not make any agreement with *Owens* either to pay or guarantee him. None of the assignees is a holder for value, for the assignments were all made to apply on existing debts; and, finally, there is no priority in time, for the assignments and deliveries are all found to have taken place "on or about September 1st."

We conclude, therefore, that the equities of the four assignees are equal, and that upon payment into court by the board of regents of the sum of $2,833.69, as tendered in their answer, judgment should be entered dismissing the complaint as to them, and dividing the fund between Skobis Bros., Rohde & Patek Bros., Stephenson & Studeman, and *William Owens,* in proportion to the architects' certificates held by them respectively. The prayer of defendant *Henry Ferge's* answer should be denied. Appellant will recover its

Brown vs. The Chicago & Northwestern R. Co.

taxable costs in this court and in the circuit court, to be paid out of the funds in its hands. No costs will be taxed for or against any of the other parties.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.