## FIRST METHODIST EPISCOPAL CHURCH OF DALLAS v. THOMPSON et al.
### (No. 3760.)

Court of Civil Appeals of Texas. Texarkana.
Dec. 6, 1929.

Rehearing Denied Dec. 12, 1929.

Thompson, Knight, Baker & Harris and Marshall Thomas, all of Dallas, for appellant.

Tom C. Clark and Niblo & Dodd, all of Dallas, for appellees.

LEVY, J. With the view of relocating the church on other property in a different portion of the city, the First Methodist Episcopal Church of Dallas, under authority duly granted and acting through the duly constituted and authorized board of trustees, sold and conveyed its church property, located at the intersection of Harwood street and Ross avenue in Dallas, to the Abbey Presbyterian Church. Claiming that he was entitled to real estate agent's commission on the sale, the appellee T. M. Thompson brought suit therefor against the appellant church and Fred W. Cathey, alleging, substantially, namely: (1) That he was specially employed, or, in the alternative, undertook with the knowledge and acquiescence of the board of trustees, to find a purchaser for the property, which he did do in the Abbey Presbyterian Church; and (2) that he and Fred W. Cathey agreed between themselves that Fred W. Cathey would continue and conclude negotiations for the sale of the property to the Abbey Presbyterian Church and divide the commissions in the proportion of one-third to appellee and two-thirds to Fred W. Cathey, and that notice of such agreement was duly given to the board of trustees of appellant church before payment of the commissions was made to Fred W. Cathey.

Judgment was entered in favor of the appellee against the church and Fred W. Cathey, jointly and severally for one-third of $5,000; $5,000 was the amount of the commissions paid to Fred W. Cathey.

■ The evidence is without conflict that Fred W. Cathey was employed by the board of trustees of the Methodist Episcopal Church by written contract to effect a sale of its church property. There is evidence in behalf of the appellee Thompson that before the time of the contract with Mr. Cathey the appellee Thompson interested himself in the sale of the property, with the acquiescence of some members of the board of trustees, and undertook to negotiate with the minister of the Abbey Presbyterian Church for the purchase of the Methodist Church property. The evidence in behalf of the appellant church is to the effect that Mr. Thompson was neither employed, nor were his efforts at negotiation sanctioned or acquiesced in by the board of trustees, and that Mr. Thompson so knew. Mr. Thompson further testified, in substance, that he and Mr. Fred W. Cathey orally agreed, in case there was a sale of the property in controversy, to divide the commissions that might be received therefor in the proportion of two-thirds to Mr. Cathey and one-third to Mr. Thompson. Mr. Cathey testified that he did not make such agreement or any similar agreement with Mr. Thompson, and that he did not act in any way with Mr. Thompson in the sale of the property. There was not submitted to the jury any issue of whether or not the appellee acting by himself and independently of Mr. Cathey was entitled to a commission. Therefore such issue must be regarded as waived.

The issues submitted to the jury were:

"Issue No. 1. Was or was not an agreement entered into by and between the plaintiff Thompson and the defendant Cathey under the terms of which the defendant Cathey agreed to pay to the said Thompson, or allow him, one-third of the commissions he might receive in the event the said Cathey should succeed in making a sale of the property involved in this suit?" Answer by the jury, "Yes."

"Issue No. 2. Did the board of trustees have notice of such agreement before it made the final payment to Cathey of the commis-

sions agreed to be paid?" Answer by the jury, "Yes."

The appellant claims on appeal, by proper assignment of error, that the answer of the jury to special issue No. 2 is contrary to the evidence. The notice to the church claimed by the appellee Thompson to have been given was contained in two letters signed by him and herein set out. The first letter reads:

"Oran, Mo., November 24, 1925.

"Mr. Frank B. Slater, Dallas, Texas. Dear Sir and Friend: Am I rightfully informed that the Trustees of the Methodist Episcopal Church are negotiating with Dr. Young's church as to selling them the church property at the corner of Harwood and Ross? If so, wish to state, several months ago, I brought them an offer of $111000.00 all cash which was promptly voted down. Later on one of Dr. Young's members approached me and wanted to know if the property was for sale. I told him it was, and at that time thought that $125000.00 would buy it, later I went to Mr. Joe E. Lawther and he directed me to Dr. Young, who he said had the affairs of the church in his own hands. I called on Dr. Young, asked him if any other real estate agents had offered him the property, he said not. I said you are positive of that and he said he was. In the meantime I called up Mr. Brittson and he gave me a price of $125000.00 for the property. I submitted this price to Dr. Young, and he said he would take it under consideration.

"Now if the Trustees make a deal with Dr. Young, or his members, I shall expect the First Methodist Episcopal Church to pay me my commission which is just and right.

"Kindly present this letter to the Trustees of the Church when next you meet. If you care to make reply to same, you can do so, but I am entitled to a commission and expect the church to pay me, having first presented it to Dr. Young and was at that time in the real estate business."

Mr. Slater was one of the trustees of the church. The second letter reads:

"Hardin, Mo., February 26, 1926.

"Mr. Robert Hetherington, 1805 Euclid, Dallas, Texas.

"To Yourself and All Trustees of the First Methodist Episcopal Church of Dallas:

"It is through me that Mr. Fred W. Cathey obtained his data regarding the church property, corner of Harwood and Ross. Mr. Cathey, as well, knows I told him to whom I had offered the property (Dr. Young).

"I now wish to say you must not pay Mr. Cathey's commission for the sale of said church without first satisfying my claim and when that has been adjusted to my satisfaction. I then request you to not pay my commission to Mr. Cathey but that you deposit in the Republic National Bank what is due me."

Mr. Hetherington was president of the board of trustees. The trustees made exhaustive investigation of the claim made by Mr. Thompson as evidenced by the letters, before paying Mr. Cathey his commissions. By the first letter Mr. Thompson had the purpose and object in view to give notice to the trustees that he was entitled to and was claiming payment of a commission for finding a purchaser of the property. The trustees had the right to so construe the letter. By the second letter, written about three months later, Mr. Thompson had the purpose and object in view to give notice to the trustees that he, and not Mr. Cathey apart from him, found the purchaser of the property, and that he, apart from Mr. Cathey, had first and exclusive claim on the commission payable by the church. Considering the two letters together, the trustees could reasonably construe them as meaning and intending to mean that Mr. Thompson was claiming a separate and distinct demand of the commission. The letters do not intimate that Mr. Thompson was claiming to be a joint payee with Mr. Cathey, or that Mr. Cathey had made an equitable assignment to him of one-third of the commission; and the trustees had a right to so construe the letters. The general rule is that notice must be sufficiently direct and definite to enable the debtor to know of the assignment or joint interest. Missouri, K. & T. R. Co. v. Wood (Tex. Civ. App.) 152 S. W. 487. The following, quoting from Skobis v. Ferge, 102 Wis. 122, 78 N. W. 426, 428, can be used as a reasoned exposition of the need of notice:

"The substitution of a new creditor is in derogation of the rights of the debtor, and was strictly prohibited by the ancient rules of the common law. It is only by relaxation of those rules, in deference to the convenience of trade, that such assignments have been recognized at all. * * * The fact, however, of such substitution of a new creditor, must, in order to make the debtor liable to the assignee, be brought home to the debtor with much exactness and certainty before he has paid the debt. The rule of notice to him is much more stringent than that which may defeat the title of a purchaser of a chose in action or of real estate. The latter is free to purchase or refuse to purchase, as he chooses; and therefore it is his duty, before acting, to trace out any reasonable doubt, and inform himself of the true facts as soon as anything arises to put him on inquiry. But the debtor is not so situated. He must pay to his original creditor when the debt is due, unless he can establish affirmatively that some one else has a better right. The notice to him, therefore, must be of so exact and specific a character as to convince him that he is no longer liable to such original creditor, and to place in his hands the means of defense against him, or at least the information necessary to interplead the assignee."

It is thought that the verdict of the jury in this respect is against the weight of the evidence, and for that reason only the assignment should be sustained.

The judgment is accordingly reversed, and the cause remanded to the trial court.