**THOMPSON v. FIRST METHODIST EPIS-
COPAL CHURCH OF DALLAS.**
No. 1258—5646.

Commission of Appeals of Texas, Section B.
May 16, 1931.

Niblo & Dodd, of Dallas, for plaintiff in error.

Tom C. Clark and Thompson, Knight, Baker & Harris, all of Dallas, for defendant in error.

SHORT, P. J.

The opinion of the Court of Civil Appeals in this case is reported in 22 S.W.(2d) 346, wherein that court reversed the judgment of the trial court, which rendered judgment in favor of the plaintiff in error, and remanded the cause for another trial, on the ground that the evidence was insufficient, under the law, to show that the defendant in error had notice of the agreement between the plaintiff in error and Fred W. Cathey, by the terms of which Cathey agreed to pay to the plaintiff in error one-third of the commissions he might receive in the event Cathey succeeded in making a sale of property belonging to the defendant in error.

The defendant in error, a private corporation, in the month of November, 1925, and previous thereto, owned a parcel of land situated in the city of Dallas, at the southeast corner of the intersection of Harwood and Ross avenue, on which was situated a brick structure known as the First Methodist Episcopal Church of Dallas, Tex., which property it desired to sell, and finally did sell to another church, known as the Abbey Presbyterian Church, the price paid being $125,000. This sale was effected under and by virtue of a contract made with Fred W. Cathey, a real estate agent, who was to receive, and in fact did receive, as his commissions, the sum of $5,000, one-half of which was paid in the month of December, 1925, and the remainder of which was paid about the 1st of March, 1926. There is no controversy between the plaintiff in error and the defendant in error about the sum of money the latter was due to pay for the services rendered in procuring a purchaser for its property. However, this controversy has arisen by reason of the fact that the plaintiff in error claims that, before the defendant in error paid Cathey the second installment of $2,500, as the procuring agent of a purchaser of its property, the plaintiff in error had notified it that there was an agreement between Cathey and the plaintiff in

error that whatever commissions Cathey might receive for these services should be divided on the basis of one-third to the plaintiff in error and two-thirds to Cathey and one White, with whom Cathey was doing business as a real estate agent, and that, notwithstanding this notice, the defendant in error paid Cathey, who was alleged to be insolvent, all of said $5,000, and that, having so paid him, with notice of the claim of the plaintiff in error to participate in the fund, the defendant in error, in view of Cathey's insolvency, was liable to pay the plaintiff in error one-third of said fund so wrongfully paid to Cathey.

The case was tried to a jury upon two special issues only, no other having been requested by either party, and the jury answered issue No. 1 in the affirmative, to the effect that there was an agreement between the plaintiff in error and Cathey, under the terms of which Cathey agreed to pay the plaintiff in error one-third of the commissions he might receive, in the event Cathey should succeed in making a sale of the property belonging to the defendant in error, and also answered in the affirmative issue No. 2, to the effect that the board of trustees of the defendant in error had notice of such agreement before it made the final payment to Cathey of the commissions agreed to be paid. Judgment was entered in accordance with these answers. Cathey, against whom judgment was rendered, did not prosecute any appeal from that judgment, but the defendant in error did, with the result above stated.

While the record is voluminous and several propositions are presented, we think the case, as made by the record, presented by the application for the writ of error, must depend upon the legal sufficiency of the testimony to support the answer of the jury, to the effect that the board of trustees had notice of the agreement which the jury found had been made between the plaintiff in error and Cathey to divide the commissions Cathey might earn in procuring the sale of the property before said board of trustees made final payment to Cathey of said commissions.

Before entering upon a discussion of this question, we deem it proper to say that the record discloses, without contradiction, under the unchallenged facts found by the jury, that the defendant in error occupied the position of a stakeholder, having in its possession the sum of $5,000, which, up to the time it received notice from the plaintiff in error of a claim to a part of said fund, it was under the obligation to pay to Cathey, as commissions, for services rendered in procuring the sale of its property. The testimony tending to show notice of the claim made to a part of this fund was partly in the form of two letters, one dated November 24, 1925, and the other February 26, 1926, the latter date being previous to a final payment of said commissions by the defendant in error to Cathey. Since these let-

ters are set out in the opinion of the Court of Civil Appeals, we will only give the substance of them.

· The letter dated November 24, 1925, stated that the plaintiff in error had received from the defendant in error's representative the price it was willing to accept for the property, and that, after receiving this information, the plaintiff in error offered the property for this price to the representative of the Abbey Presbyterian Church, in effect claiming that the plaintiff in error had acted by authority of the defendant in error in offering the property for sale at the price mentioned to the Abbey Presbyterian Church through its representative, which afterwards bought the property at that price, and stating, in effect, that he expected the defendant in error to pay him a commission which was just and right.

The letter dated February 26, 1926, in effect, stated that it was through the plaintiff in error that Cathey had obtained his data regarding the property belonging to the defendant in error, and also the name of the purchaser, who afterwards purchased the property, and it notified the defendant in error not to pay all of Cathey's commission without first satisfying his claim. Among other allegations of the petition was one of the existence of a custom in the city of Dallas, among real estate agents and property owners, that if a person, who is regularly engaged in such a business, as the plaintiff in error is shown to have been, found a purchaser for an owner's property which was on the market for sale, and put such purchaser in touch with the owner, and the sale was thereby effected, the owner became liable for said agent's commission, the amount of which is also alleged to have been, by custom, fixed at 5 per cent. The petition also contained the further allegation that the general rule among real estate agents in the city of Dallas was that, when one agent obtained the listing of a piece of property, and was directed to find a purchaser for same, and engaged another agent to help him in such sale, the commissions earned on said sale were equally divided, but that in this instance the agreement was that the plaintiff in error should receive only one-third, the other two-thirds to be divided between Cathey and an associate of the latter. These allegations were established by uncontradicted testimony, the sufficiency of which is not challenged.

In addition to the two letters above mentioned, the execution and reception of which were acknowledged by the defendant in error, the record contains other testimony tending to show that the defendant in error had notice of the plaintiff in error's claim to some interest in this fund, though the testimony on this subject is meager, and yet the jury were entitled to give it whatever weight they saw proper. The plaintiff in error testified that he solicited from the president of the board of trustees of the defendant in error the right to sell this property, and from another authorized agent of the defendant in error he was granted the privilege of selling it, and that this particular member of the board authorized him to offer it for sale at $125,000, which is the price the defendant in error finally received for it; that, after receiving this authority, he had an interview with the pastor of the Abbey Presbyterian Church suggesting that the Presbyterian Church buy this property at this price, and afterwards he made the agreement with Cathey to continue negotiations with the Presbyterian Church, which the testimony shows Cathey afterwards did, and finally succeeded in selling the property of the defendant in error to the Presbyterian Church for the sum of $125,000. These letters and this testimony, in the light of the further facts shown by the record, without dispute, show that the defendant in error had been discussing, for several months previous thereto, the advisability of selling this property, of which discussion the plaintiff in error is shown to have had actual knowledge, and that it had made divers and sundry efforts to find a real estate agent who would be able to effect a sale.

The Court of Civil Appeals, in its opinion, in effect holds that the testimony in support of the allegation that the defendant in error had notice of the plaintiff in error's claim to a part of the fund it had in its hands, and which it paid to Cathey as commissions, for procuring a purchaser for its property, was legally insufficient to put a reasonably prudent man upon inquiry, which, if pursued by proper diligence, would have resulted in a knowledge of the fact that the plaintiff in error had a just claim to one-third of this fund. In support of this conclusion, the Court of Civil Appeals cites the case of Skobis v. Ferge, 102 Wis. 122, 78 N. W. 426, which holds, in effect, that, "in order to substitute a new creditor so as to make the debtor liable to the assignee, the fact of such substitution must be brought home to the debtor with much exactness and certainty before he has paid the debt."

The first proposition of the plaintiff in error, under the first assignment of error, is in this language: · "While the burden of proof rests upon the assignee or a joint owner of a nonnegotiable claim to establish notice to the debtor of the assignment or joint interest, at the time of settling with the original creditor, he is only required to prove some fact indicating notice and any fact or circumstance, sufficient to put a man of ordinary prudence on inquiry, from which, by the exercise of proper diligence, he may ascertain the fact and sufficient proof, and what is sufficient proof is a question of fact to be passed upon by the jury."

■ The unchallenged fact apparently supported upon sufficient proof, we have seen from the answer of the jury to issue No. 1, is that there was an agreement between the

plaintiff in error and Cathey, under the terms of which Cathey agreed to pay the plaintiff in error one-third of the commissions he might receive in the event Cathey should succeed in making a sale of the property belonging to the defendant in error. The defendant in error, in effect, concedes that such an agreement existed between the plaintiff in error and Cathey at the time the defendant in error paid over the balance of the commissions in its hands, due for the services rendered in the procuring of a purchaser for the sale of its property. However, its contention is that the defendant in error had no sufficient notice of the existence of this fact. The Court of Civil Appeals having sustained this contention of the defendant in error, it reversed the judgment of the trial court and remanded the cause for another trial, apparently overruling all the other contentions made by the appellant in that court, who is the defendant in error here, and, since the defendant in error has not presented any application for a writ of error, based upon the contention that the Court of Civil Appeals erred as to these other matters, we must assume that the defendant in error concedes the correctness of the conclusions reached by the Court of Civil Appeals in the rendition of its opinion.

Any fact or circumstance which is sufficient to put a reasonably prudent man upon inquiry, and which is of such a character that he might ascertain the true situation of the matter in controversy, by the exercise of proper diligence, will be regarded as a sufficient legal notice. West Realty Co. v. Hite (Tex. Com. App.) 283 S. W. 481, 483; Wichita Falls Electric Co. v. Chancellor & Bryan (Tex. Civ. App.) 229 S. W. 649, writ of error refused; 5 C. J. p. 937; Elliott on Contracts, vol. 2, § 1446.

As said by Judge Speer, speaking for this section of the commission, in West Realty Co. v. Hite, supra, which was a suit brought by a real estate broker against the owner for a part of the commissions which the owner had become liable to pay to another broker: "It is more than an agreement by Blake to pay out of the commissions when received. This would not constitute an equitable assignment at all. It would be merely a personal promise to pay at last. 5 Cor. Jur. p. 913, § 80. Rather it is an agreement that the parties were to be joint owners of the commission when earned through a sale to a purchaser of plaintiffs in error's procurement. The agreement in the light of the subject-matter and all the circumstances evidenced a present passing from Blake of all control over, or interest in, the fund to the extent of one-half, whenever it actually came into existence. Under that agreement the owners, without further action by Blake, would have been justified in paying to this extent directly to plaintiffs in error. * * * See 5 Cor. Jur. p. 914, note 35 (b)."

Inasmuch as the plaintiff in error was required to prove only some fact or circumstance indicating that the defendant in error had notice, at the time settlement was made with Cathey, that the plaintiff in error was making some claim to the fund, which the defendant in error acknowledged to be due some one, and inasmuch as these letters, especially in connection with the situation under which the letters were received, as shown by the oral testimony of the case on this subject, show that sufficient facts were brought home to the defendant in error to put a reasonably prudent man upon inquiry as to the truth of the situation, we are of the opinion that there is ample testimony to support the findings of the jury in answer to issue No. 2, to the effect that the board of trustees of the defendant in error had notice of the agreement, which the jury found existed between the plaintiff in error and Cathey, before it made final payment to Cathey of the commissions agreed to be paid for the services rendered.

The opinion of the Court of Civil Appeals holds, as a matter of law, that, viewing the testimony most favorably for the plaintiff in error, on the question of notice, said testimony was legally insufficient to impose upon it the duty to withhold that part of the fund it recognized to be due some one, for the services rendered in procuring a purchaser for its property, until it had made the inquiry which the law imposed upon it, as to the claim to a part of said fund, made by plaintiff in error, the existence of which claim is shown to have been a fact, since it appears that this fact would have been discovered by the defendant in error had it used proper diligence in pursuing said inquiry. It is our opinion that, in this holding, the Court of Civil Appeals committed an error, and we sustain the first assignment of error.

Since we believe that, under the testimony shown by the record, it was incumbent upon the trial court to submit to the jury issue No. 2, as it did, and that after receiving a reply that the defendant did have notice of plaintiff in error's claim to a part of this fund, which was afterwards paid to Cathey, the man who had agreed with the plaintiff in error to divide the commissions with him, in the event the sale was effected of the property, the trial court properly entered the judgment it did.

Believing that the defendant in error was charged with the duty of withholding from Cathey the payment of the $2,500 it paid to him under the circumstances detailed, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.