HYLAND, Intervener, Appellant, vs. ROE, Receiver, Respondent.

*September 6 — September 24, 1901.*

*Banks and banking: Receiving money when insolvent: Rescission: Recovery of fund in hands of receiver: Identification: Pleading: Offer of restoration.*

1. The acceptance of a deposit by a bank irretrievably insolvent constitutes such a fraud as entitles the depositor to reclaim his money, although there may have been no intent on the part of the officers of the bank to cheat or defraud him in particular.

2. On the day before an insolvent bank closed its doors, the payee of a check on another bank delivered it to the insolvent bank and received a part of the amount in cash and a certificate of deposit for the balance. The check was sent to the drawee bank, which, by order of the insolvent bank, transmitted to the credit of the latter the amount which had been paid in cash but, at the request of the payee, held the balance for a time. Afterwards such balance was paid over to the receiver of the insolvent bank. *Held,* that the fund thus paid over was sufficiently identified as the proceeds of

Hyland vs. Roe.

the check to warrant its recovery by the payee upon rescission of the transaction for fraud.

3. A petition, in such case, that the receiver be required to pay over said fund to the payee of the check was not insufficient, on demurrer, because it failed to allege a readiness to return the amount of the cash received, since the insolvent bank had in turn received that amount; but, the certificate of deposit being a sufficient . foundation for a claim for dividends, failure to tender it back or to offer to do equity in respect thereto rendered the petition demurrable.

APPEAL from an order of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

The Dane County Bank was a banking corporation doing business at Stoughton, Wisconsin. The bank became insolvent, and at the suit of Sylvanus Ames and others a receiver was appointed to wind up its affairs. The appellant had a claim against the bank, and presented his petition to the court asking for an order requiring the receiver to pay over to him certain funds in his hands. The receiver demurred to the petition on the ground that it did not state facts sufficient to entitle him to relief. The demurrer was sustained, and the petitioner brings this appeal.

The facts stated in the petition are as follows: The Dane County Bank was a banking corporation organized in 1893, and conducted a general banking business at the city of Stoughton until June 10, 1899. Its affairs were under the immediate control of one O. M. Turner, its president, who had the confidence of the people, and the bank did a large business. The petitioner was a farmer, and from time to time had done business with the bank, and believed it was solvent. On the morning of June 9, 1899, he had and owned a check given by one G. F. Tallard on funds in the Tobacco Exchange Bank of Edgerton, Wisconsin, for $1,284.10. Not desiring to use said money, and having confidence in said Dane County Bank, the petitioner delivered said check to the president of the bank, and received from him $284.10. in

cash, and a certificate of deposit for $1,000. At that time the bank was insolvent, and known to be so by Turner. Notwithstanding such insolvency, it received said check, and on the same day transmitted it to the Edgerton bank for payment. On the following day the Dane County Bank closed its doors, and a receiver was appointed. On June 10, 1899, the Tobacco Exchange Bank, by order of the Dane County Bank, transmitted the sum of $284.10 by draft to Marshall & Ilsley's Bank of Milwaukee, to the credit of the Dane County Bank, being a part of the proceeds of said Tallard check. At the request of petitioner, the Tobacco Exchange Bank held $1,000, the remainder of the proceeds of said check, until November 27, 1899, when it was paid over to the receiver. A demand was made upon the receiver to pay over said sum, which was refused, and he still has said sum under his control.

For the appellant there were briefs by *Sanborn, Luse & Powell*, and oral argument by *A. L. Sanborn* and *L. K. Luse*. They contended, *inter alia*, that a tender of restoration was unnecessary. Such tender is usually made in the prayer for relief, and a demurrer will not reach a defect in the prayer. 6 Ency. of Pl. & Pr. 408; 3 id. 346; *Nelson v. Ferdinand*, 111 Mass. 300. In an equitable action, where the court has full power to protect the rights of the parties, a tender does not go to the cause of action. *Dunn v. Amos*, 14 Wis. 106; *Seeley v. Howard*, 13 Wis. 336; *O'Dell v. Burnham*, 61 Wis. 562; *Mankel v. Belscamper*, 84 Wis. 218; 2 Wait, Pr. 579. The certificate of deposit in this case was in legal effect nothing more than a promissory note, and such a note need not be tendered back in order to rescind or avoid a fraudulent purchase of property. *Hyland v. Bohn Mfg. Co.* 92 Wis. 157; *Friend Bros. C. Co. v. Hulbert*, 98 Wis. 183; *Nichols v. Michael*, 23 N. Y. 264; *Thurston v. Blanchard*, 22 Pick. 18; *Snow v. Alley*, 144 Mass. 546; *Duval v. Mowry*, 6 R. I. 479; *Manning v. Albee*, 11 Allen, 520.

For the respondent there was a brief by *Olin & Butler*, attorneys for *B. E. Wait*, successor to G. E. Roe as receiver, and oral argument by *H. L. Butler*.   They argued, among other things, that whether the certificate of deposit was negotiable or nonnegotiable, it was the absolute promise to pay of the bank, and was presumably of value.   The failure to set out in the petition a willingness and ability and offer to restore the certificate makes the petition demurrable.  18 Ency. of Pl. & Pr. 829, 831; *Herman v. Gray*, 79 Wis. 182, 187; *Becker v. Trickel*, 80 Wis. 484; *Welsh v. Blackburn*, 92 Wis. 562; *Walker v. Pogue*, 2 Colo. App. 149; *Reeves v. Corning*, 51 Fed. Rep. 774, 782; *Long v. Johnson*, 15 Ind. App. 498; *Wainwright v. Weske*, 82 Cal. 193; *Purdy v. Bullard*, 41 Cal. 444; *American F. L. & M. Co. v. Jefferson*, 69 Miss. 770; *Ross v. New England M. S. Co.* 101 Ala. 362; *State ex rel. Lewis v. Williams*, 39 Kan. 517; *Buena Vista F. & V. Co. v. Tuohy*, 107 Cal. 243; *American F. L. M. Co. v. Sewell*, 92 Ala. 163; *Herman v. Haffenegger*, 54 Cal. 161.

BARDEEN, J.   The first point made against the sufficiency of the petition is that there is no sufficient averment of fraud to authorize a rescission of the transaction.   The facts show that the bank was a going concern, and had been for some years, transacting a large business and receiving large sums for deposit; that it was conducted by its president, O. M. Turner, who had the confidence of the people in and about the city of Stoughton; that it was advertised by said bank and its officers that it was a safe banking institution; that from time to time the claimant had done business with the bank, and believed that it was a safe and solvent bank; that at the time of said deposit it was hopelessly insolvent, and had been for several months prior to that time, and that said Turner knew, and had good reason to believe, that it was insolvent and unsafe.   The demurrer admits the truth of these facts.   Sec. 4541, Stats. 1898, makes it a penal

Hyland vs. Roe.

offense for an officer of a bank to receive money on deposit when he knows, or has good reason to know, that the bank is unsafe or insolvent.    The officer or agent of the bank who disobeys the statute or neglects to perform the duty imposed thereby, to the injury of a depositor, is personally liable for all damages resulting proximately from such disobedience or neglect.  *Baxter v. Coughlin,* 70 Minn. 1.   Bankers are held to a rigid responsibility for good faith and honest dealing.   The acceptance of a deposit by a bank irretrievably insolvent constitutes such a fraud as entitles the depositor to reclaim his money if he brings himself within the rules of law hereinafter to be mentioned.   A bank hopelessly insolvent cannot honestly continue its business and receive the money of its customers; and, although there may be no intent to cheat and defraud a particular customer, it will be held to have intended the inevitable consequence of its act, which is to cheat and defraud all persons whose money it receives and whom it fails to pay before it is compelled to stop business.   *St. Louis & S. F. R. Co. v. Johnston,* 133 U. S. 566.   This court has spoken on this subject in language too plain to be misunderstood.   In *Baker v. State,* 54 Wis. 368, the following language is used:

"A bank implies capital, and capital invites confidence. A man holding himself out as a banker or broker thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be fully trusted. It requires no argument to show that such assurance is most inviting and influential with the mass of the people, especially with those unacquainted with the history and character of the man.   With them the banker or broker is intrusted with money simply because he is a banker or broker, and hence supposed to have surplus capital as a standing guaranty of his agreements and his integrity.   For an insolvent banker, company, or corporation to continue the business of banking is to hold out assurance of responsibility and surplus capital where neither exists.   To do so knowingly is to secure the confidence, and hence obtain the

money, of the ignorant and unwary by an implied deception. It is the old story of securing the victim by a display of false colors."

Banks stand upon a somewhat different footing from individuals. This difference is indicated by the language just quoted. Moreover, a bank is prohibited by law from continuing business after it has become insolvent. This is the effect of the statute. Not so as to an individual engaged in his private business. As said in *David Adler & Sons C. Co. v. Thorp*, 102 Wis. 70, the individual may have "an honest, though abortive, purpose to continue business," though founded in delusion and unreasonable expectation, and yet not be guilty of a fraud. In such a case, mere knowledge of insolvency, unaccompanied with false statements or artifices to deceive the trusting, is not considered fraudulent. Under the statute the bank has no right to continue business when its officers know, or have good reason to know, that it is unsafe or insolvent. If it does continue business, then the intent to cheat and defraud whoever deals with it irresistibly arises. The dishonest purpose comes from the knowledge of the officers and extends to all persons having dealings with the bank, and it is immaterial whether there was or was not a distinct intent to cheat or defraud a particular customer; otherwise, the bank might hide behind the alleged *bona fides* of the official, and the very purpose of the statute be defeated.

Another reason suggested why the petition is insufficient is that there is no sufficient identification of the proceeds of the check to authorize the relief demanded. Since the decision in *Nonotuck S. Co. v. Flanders*, 87 Wis. 237, if the fund sought to be secured has been disposed of by the banker before the funds have come to the possession of the assignee or receiver, or it has been so mixed with other funds as to lose its identity, it cannot be reclaimed. *Burnham v. Barth*, 89 Wis. 362; *Thuemmler v. Barth*, 89 Wis. 381; *Stevens v.*

*Williams,* 91 Wis. 58; *Dowie v. Humphrey,* 91 Wis. 98.
Therefore there can be no recovery in this proceeding un-
less the money sought to be secured can be identified as the
proceeds of the Tallard check with such certainty as to
bring it without the line of the decisions cited.   The decis-
ion of the trial judge was that when the check was depos-
ited the title passed to the bank, and the claimant then
stood in the position of a general creditor.   He says:

"Though the transaction between him and the bank was
in fact tainted by fraud, yet the title to the money by him
deposited passed to the bank, and left him, when the bank
closed its doors, as it did all others who deposited money
within the period when the bank was insolvent, namely, a
general creditor, to share *pro rata* out of the fund realized
from the assets of the bank."

This court has never denied relief in such cases on the
ground that the title to the money, draft, or check had
passed to the bank.   The decisions are based rather upon
the fact that the claimant has been unable to identify the
specific fund or thing demanded and trace it into the hands
of the receiver or assignee of the estate.   That is, the trust
did not impress itself upon the whole corpus of the estate,
but only followed the specific thing itself.   If that could
not be traced and identified, no relief was granted.   The
following language from the opinion in *Burnham v. Barth,*
89 Wis. 362, seems to cover the rule established in this
state:

"Since the decision of the court in the case of *Nonotuck
S. Co. v. Flanders,* 87 Wis. 237, and *In re Plankinton Bank,*
87 Wis. 385, it must be regarded as settled, in this state at
least, that, in order that the beneficiary or owner of a trust
fund may be able to regain it out of the estate of a default-
ing and insolvent trustee, he must be able to trace it into,
and satisfactorily identify it in, the hands of the assignee
or receiver of his estate, or its substitute or substantial
equivalent; that, when the trust fund has been dissipated
or so confounded and mixed up with the property and es-
tate of the trustee that it cannot be traced or identified,
there remains nothing to be the subject of the trust."

No doubt the title of the check passed under the terms of the transaction alleged, but that title was subject to be defeated and the check reclaimed by showing fraud. If, while the bank had possession of this check, *Mr. Hyland* had demanded its return and offered to make return of that which he had received, his right would have been unquestionable, conceding the insolvency of the bank. Had the check been turned over to the receiver, the claimant's right would have been just as absolute, for the receiver would get no better title than the bank had. The check deposited was but the evidence of a debt due from the Tobacco Exchange Bank to *Mr. Hyland*. The proceeds of that check never came to the possession of the bank, and were never intermingled with its funds. The fact that the bank fraudulently attempted to account to *Hyland* for the proceeds does not alter the situation. It was the money due on that check that he was entitled to. The bank advanced to him a portion thereof in anticipation of its payment. That sum was repaid by draft sent to the Milwaukee bank. When the doors of the bank closed, there was the sum of $1,000 still in the hands of the Edgerton bank, which had not been paid over. The bank's claim to it was based upon a transaction alleged to have been fraudulent. The right of *Mr. Hyland* to rescind the transaction and to reclaim his money was absolute, if such fraud was proven. That right cannot be defeated by a mere system of credits. It is only when the identity of the fund has been lost, when it has been dissipated, or so confounded and mixed up with other funds that it cannot be traced, that it cannot be reclaimed. One thousand dollars of this specific fund had never reached the vaults of the defunct bank. While it was held by the debtor, the real owner made an attempt to reclaim it. By his request it was held by the debtor for some months. When it was paid over to the receiver, it was not a payment on an account due the Dane County Bank, but the payment of

Hyland vs. Roe.

the unpaid portion of the Tallard check. It came to the hands of the receiver as such, and in equity must be deemed to be held by him subject to the rights of *Hyland* thereto. It seems to us that the identification of the fund is complete in his hands, and the right of the claimant thereto absolute, under the rules heretofore stated, provided, of course, the facts alleged are sustained by proper proof.

What has been said is based upon the supposition that the claimant has placed himself in position to command the aid of a court of equity. This, however, is denied by the receiver, who claims that the petition is insufficient, because it contains no offer to do equity and does not show an offer of rescission or that it is within the power of the claimant to completely rescind the transaction. Referring again to the facts, it appears that when the check was deposited the claimant received $284.10 in cash and a certificate of deposit for $1,000. Presumably, this certificate was negotiable paper. The petition contains no allegation that the claimant is the owner and holder thereof, no offer to return, or allegation that he is in a position to return it. Neither does it allege any offer to return the money received. The receiver invokes the well-known rule that, before a contract can be rescinded, the party claiming the benefit of such rescission must allege an offer to return what he received, or a readiness to return the same; or, instead of such offer, that he elected to rescind the contract and the other party denied his right to do so. As regards the return or offer to return the money received, no good reason exists why it should be done or made. The petition shows that the Tobacco Exchange Bank paid the Dane County Bank $284.10 by draft to its credit at the Marshall & Ilsley Bank at Milwaukee. This effectually wipes out that item, and leaves the case free from any supposed complications arising therefrom. It would be far from equitable to require the claim-

ant to return or offer to return that which the bank has already received. This does not in any way conflict with the rule of total rescission. What was said on this subject in the recent case of *Ludington v. Patton, ante,* p. 208, sufficiently answers the contention of counsel on this point.

The proceeding is equitable in its nature, and the claimant ought not to succeed without a showing that the estate in the hands of the receiver will not suffer beyond the liability claimed. The petition simply alleges a demand on the receiver for this $1,000 as the proceeds of said check, and a refusal to pay. It does not appear that this demand upon the receiver was made upon a claim of a rescission of the former transaction, or that the refusal to pay was based upon a denial of the right of rescission, so as to bring the case within *Potter v. Taggart,* 54 Wis. 395. Nor do the allegations of the petition bring it within that class of cases of which *O'Dell v. Burnham,* 61 Wis. 562, is a type, where an offer to tender back money was not made before action brought. In this case the plaintiff offered to do so in his complaint, and it was held that the objection that he had not done so before suit was not available after the matter had gotten into court. At most, it could only affect the question of costs. Nor should the situation be confused with another class of cases, where the willingness or readiness to restore is not alleged in the complaint, and the absence of such allegations was not taken advantage of by demurrer. Where restoration is a mere matter of administration in a suit that has been litigated, the court can very easily preserve the rights of the parties by requiring restoration as a condition of relief. But, when the sufficiency of the pleading is tested by demurrer, a stricter rule is applied, and the party seeking relief must affirmatively show a readiness and willingness to do equity in order that his pleading shall withstand the test. This is necessary to prevent fruitless trials and the expense of useless litigation.

The rule of pleading in this regard seems to be correctly stated in 18 Ency. of Pl. & Pr. 829:

"The plaintiff will not be permitted to repudiate his contract and still retain the benefits which he has derived from it; and his desire and willingness to restore what he has received must appear in the bill or complaint, otherwise he will have no standing in a court of equity."

Again, page 831:

"It is for the plaintiff to show clearly that he can restore to the defendant all that he has received under the contract, and that the parties can be placed *in statu quo*, and it is not for the defendant to show that it cannot be done." *Davis v. Tarwater*, 15 Ark. 286.

In *Ludington v. Patton, supra*, this language is used:

"It is sufficient, in an action for rescission, to show in the complaint a willingness to do equity, to submit to a complete rescission so far as practicable, and to make the defendant good for what was received from him in such manner as the court may direct."

See *Eslava v. Elmore*, 50 Ala. 587; *Mohawk & H. R. Co. v. Clute*, 4 Paige, 384. In order to secure relief in a court of equity, a party must so frame his pleading as to indicate a willingness that the court may deal with him as well as the defendant on such terms as to do complete justice. A failure to offer to do equity where some affirmative action is necessary to restore the former condition or put the parties on an equality renders the pleading demurrable. The certificate of deposit was sufficient as a foundation for a claim to dividends. The receiver was bound to protect his estate against double claims. The order of the court below must be sustained upon the sole ground that the petition is insufficient, in that it fails to meet the rule in equity above mentioned. The order of the trial court gives the privilege of amendment, and it will undoubtedly be an easy matter for the claimant to amend his petition in the particulars referred to.

*By the Court.*— The order is affirmed, and the cause is remanded for further proceedings according to law.