THIEL, Respondent, vs. JOHN WEEK LUMBER COMPANY, Appellant.

*November 28—December 15, 1908.*

*Logs and logging: Contract to cut and bank: Breach: Assignment of* *contract: Splitting of demands: Debtor's nonconsent: Liability* *to assignor.*

1. In an action to recover a balance claimed to be due for cutting, skidding, and banking logs and to enforce a lien therefor, it is held under the evidence that, defendant having breached the contract by refusing to permit a test scale as provided in the

contract, it was competent for the plaintiff to show by testimony the actual number of feet of logs cut and banked, although it varied from that made by the scaler named under the contract.

2. A debt cannot be split up by a creditor against the debtor's consent, even by formal assignments, since the debtor has the right to pay his debt *in solido* and to refuse to be subjected to claims or suits by various claimants. ·

3. Where a debtor has refused to consent that his debt be split up by partial assignments, the. creditor can maintain his action to recover the entire debt, notwithstanding there be outstanding unaccepted orders drawn by the creditor in favor of third persons.

APPEAL from a judgment of the circuit court for Taylor county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action to recover a balance claimed to be due for cutting, skidding, and banking saw logs and to enforce a log lien therefor.   The action was tried before a jury.   It appeared that the parties made a written contract December 5, 1904, by which plaintiff was to cut, mark, haul, and bank on Rib river all the timber on a certain quarter-section of land during the winter of 1904 and 1905 for $5 per thousand, to be paid in instalments as the work progressed, the final payment to be made May 1, 1905.   One clause of the contract provided that the logs should be scaled by a scaler to be mutually agreed on, and that either party, if dissatisfied with such scale, might demand a test scale to be made by some competent, disinterested scaler to be agreed on by the parties. It further appeared that the plaintiff did not cut the entire amount of timber, but he claimed, and gave evidence tending to prove, that he was released from entire performance by subsequent parol agreement.   One Nelson was sent by defendant to do the scaling, and according to his scale the amount cut and banked was 420,830 feet.   Soon after Nelson commenced scaling the plaintiff became dissatisfied with his scaling and employed another man to make an independent scale. ·  Plaintiff claimed, also, that he communicated his

dissatisfaction to the defendant, and that defendant's agent told him that if there was anything wrong with the scale it would be fixed up in the spring, but this was denied by the defendant's testimony. According to the plaintiff's independent scale there were 500,000 feet of logs cut and banked. It appears without dispute that on April 1, 1905, the plaintiff made a written demand that a test scale be made, and that the defendant refused to consent that such a scale be made, on the ground that it was too late and that the logs had gone down the river. There was no evidence, however, tending to show that the logs had in fact gone down the river, and the plaintiff testified that the logs were then so that they could be scaled. The defendant counterclaimed for damages for failure to cut and bank all the timber and for failure to properly bank the logs cut. The defendant also claimed that the plaintiff had sold and assigned his claim to third parties and was not the real party in interest.

The jury returned a special verdict to the effect (1) that the original written contract was made by the parties; (2) that said contract was afterwards modified as alleged by the plaintiff; (3) that during the progress of the work the defendant's agent induced the plaintiff to waive his right to demand a test scale; (4) that defendant waived the provision calling for the cutting and banking of the logs, which plaintiff failed to cut and bank; (5) that plaintiff complied substantially with the terms of the modified contract; (6) that plaintiff in fact banked 481,760 feet of logs; (7) that plaintiff's damages amounted to $563.41; (8) that plaintiff did not bank the logs in convenient rollways in a workmanlike manner in full accordance with the contract; and (9) that by reason of such failure defendant suffered damages in the sum of $110. Upon this verdict judgment was rendered for the plaintiff for the amount of his damages (less the defendant's damages on its counterclaim), with interest and costs, and the defendant appeals.

For the appellant there was a brief by *Schweppe & Urquhart,* and oral argument by *E. H. Schweppe.*

*Herman Leicht,* for the respondent.

Winslow, C. J.    We do not find it necessary to consider the errors assigned in detail.    The fundamental questions in the case were whether, under the facts in evidence, the plaintiff was bound by Nelson's scale, and whether he had lost his right to have a test scale made at the time he made his demand.

The testimony as to the accuracy of Nelson's scale is not very satisfactory.    Under his own testimony it appears that he actually scaled only a portion of the logs and estimated the balance, and it may well be doubted whether he in fact made a scale such as the contract required.    But be this as it may, it is certain that on the 1st of April the plaintiff exercised his contract right of demanding a test scale, and all the evidence on the subject shows that at this time the logs were still in such a situation that a test scale could be made. The defendant refused this demand and thus breached the contract, and it was then competent for the plaintiff to show by other testimony the actual number of feet of logs cut and banked.    This he did, and we cannot say that upon the evidence before them the jury were not justified in finding, as they did, that the whole amount was 481,760 feet.    Thus all questions concerning the alleged waiver of the right to demand a test scale become immaterial.

The court did not submit to the jury any question concerning the alleged assignment of the claim to third persons, and this omission is assigned as error.    The evidence shows that during the progress of the work the plaintiff drew orders on the defendant in favor of third persons amounting to more than $800, which the defendant refused to pay.    The form of the orders is not given, and hence we assume that they were merely general orders to pay money and did not name

the fund from which they were to be paid.    The debt could not be split up by the creditor against the debtor's consent, even by formal assignments, because the debtor had the right to pay its debt *in solido* and to refuse to be subjected to claims or suits by various claimants.    In the present case the debtor did so refuse, and could at any time have discharged its debt to the plaintiff by paying him the whole sum due, without regard to the rejected orders or liability to their holders.    *Skobis v. Ferge,* 102 Wis. 122, 132, 78 N. W. 426. Hence it seems clear that, the defendant having refused to consent to partial assignments of the debt, the creditor could unquestionably maintain his action to recover the entire debt. Otherwise a situation would be presented where nobody could recover it.

No other questions are presented of sufficient importance to require treatment.

*By the Court.*—Judgment affirmed