CHICAGO—FIRST DISTRICT—OCTOBER, 1917.    155

Ozburn v. Corn Exchange Nat'l Bank of Chicago, 208 Ill. App. 155.

## Hattie L. Ozburn, Administratrix of the Estate of Alexander M. Ozburn, Deceased, Appellee, v. Corn Exchange National Bank of Chicago, Appellant.

### Gen. No. 22,275.

1. BANKS AND BANKING, § 126*—*when holder of check has lien upon money in bank.* Under the Negotiable Instruments Act of 1907 (J. & A. ¶ 7640 *et seq.*), the holder of a check has no lien upon the money in the bank upon which it is drawn, unless the check has been accepted or certified.

2. BANKS AND BANKING—*what is right of depositor as to countermanding order to bank as agent.* Under the Negotiable Instruments Act of 1907 (J. & A. ¶ 7640 *et seq.*), the bank is the agent and the depositor the principal, and the latter has the right seasonably to countermand any order which he may have issued upon the agent.

3. BANKS AND BANKING, § 140*—*how check may be countermanded.* The payment of a check may be countermanded by means of telegraphic notice.

4. BANKS AND BANKING, § 140*—*when telegram countermanding payment of check is received in ample time before presentation for certification.* Where a telegram countermanding the payment of a check is received by the bank on which the check is drawn at 11 minutes before 3 and the check is certified by the bank between 10 and 11 o'clock on the following morning, the telegram was received by the bank in ample time to stop payment before the check was presented for certification.

5. NAMES, § 16*—*what are idems sonans.* "Osburn" and "Ozburn" are *idems sonans*.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Affirmed. Opinion filed October 31, 1917. Rehearing denied November 12, 1917. *Certiorari* denied by Supreme Court (making opinion final).

GARDNER, FOOTE & BURNS, for appellant.

NINIAN H. WELCH and WILLIAM J. LACEY, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The appellee, Hattie L. Ozburn, administratrix of the estate of Alexander M. Ozburn, brought suit in the Municipal Court of Chicago against the Corn Exchange National Bank of Chicago, appellant, for the sum of $1,348 and interest, on account of the certification and payment of a check for that amount, after she had sent a telegram to the bank to stop payment. No evidence was offered by appellant, and upon the conclusion of appellee's evidence the court entered judgment for the sum of $1,475.40 against the appellant.

The appellee had some funds of the estate of Alexander M. Ozburn, deceased, in appellant bank, subject to her check, as administratrix, when countersigned by the American Surety Company. During a visit to Nebraska, on Saturday, February 28, 1914, she gave a check, drawn on this account, for the sum of $1,348, to one Anson H. Brown. On the following Monday, March 2, 1914, she sent a telegram to the bank, which was received by it, in the following words: "Suspend payment on check issued to Anson Brown * * * instructions following. Mrs. Hattie L. Osburn." This message reached the appellant at 2:49 p. m. of the same day. The next morning, on March 3rd, between the hours of 10 and 11 o'clock the check in question was presented for certification and was certified and charged against the account of appellee. In the meantime the American Surety Company had countersigned it and stamped on its face "payment consented to." Thereupon, after its certification, Brown took it to the Standard Trust and Savings Bank and had it cashed. No instructions were sent to the appellant outside the telegram. Appellee demanded the amount of the check from appellant and it denied any liability and refused payment. The evidence shows that the notification by telegram to "suspend payment" was recognized as such, and, in part,

acted upon by the employees of the appellant in the regular course of their business. The indorsement on the telegram "Stop payment. Enter, pass along immediately," etc., which was made by a rubber stamp, shows that the appellant received and recognized and considered the telegram as a notification to countermand the check in question.

It is claimed by the appellant that the telegram varied from the allegations in the statement of claim, and, therefore, should not have been admitted in evidence; that if admitted in evidence it was not sufficient notice to the bank to stop payment; and that the bank, considering its many accounts and the volume of its business, cannot be charged with negligence in failing to act on the notice given. In view of the issue and the evidence as it appears, it seems to be necessary to consider but one question and that is whether the telegram, which was sent and received, was sufficient notice to the bank to constitute a legal countermand of the check in question.

Since the passage of the Negotiable Instruments Act in 1907 (J. & A. ¶ 7640 *et seq.*), the holder of a check has no lien upon the money in the bank upon which it is drawn unless the check has been accepted or certified. The bank is the agent and the depositor the principal and the latter has the right seasonably to countermand any order upon the agent which he the principal may have issued. In *Cook v. Lewis*, 172 Ill. App. 518, the court said: "It would seem to be evident that the Legislature intended, by this section of the act (referring to section 188), to change the rule in Illinois so as to make it conform to the rule which obtains in most of the other States and in England." This statute evidently makes the depositor the principal and the banker his agent. Under its terms a check is simply a written order (revocable when complied with) to pay a certain sum of money to the legal

158 'APPELLATE COURTS OF ILLINOIS.

Ozburn v. Corn Exchange Nat'l Bank of Chicago, 208 Ill. App. 155.

holder. The appellee in the instant case undertook to stop payment on a check by means of a telegram, and that gives rise to the incidental question whether notice by means of a telegram may be sufficient under any circumstances. That subject was very exhaustively considered in the case of *Curtice v. London City & Midland Bank,* 1 Law Rep. 293. In that case a stop-payment telegram was put in the bank letter box about 6 p. m., the bank being closed at the time, and, through an oversight, the telegram was not taken out of the letter box until the second day thereafter. The court held that the telegram did not countermand the check as the bank could not be said to have received actual notice, and it was in doubt whether under any circumstances there could be such a thing as constructive notice. It was also suggested by the court, in the course of the discussion in that case, that it was not satisfied that a bank is bound as a matter of law ''to accept an unauthenticated telegram as sufficient authority for the serious step of refusing to pay a check'' and that, as to stopping payment by telegram, ''it would depend a great deal on the custom of the bankers.'' It has been held, however, in many cases in the United States, that a draft, for example, may be accepted by telegram, even in jurisdictions where the law requires the acceptance to be in writing (*Coffman v. D. C. Campbell & Co.,* 87 Ill. 98; *Molson's Bank v. Howard,* 40 N. Y. Superior Ct. 15; *Johnson v. Clark,* 39 N. Y. 216; *Central Sav. Bank v. Richards,* 109 Mass. 413); and it would seem to follow as reasonable that if a promise to pay may be made by telegram, that an order not to pay, as in the case of a countermand by a depositor in a bank, may be made by telegram. Although we do not find that the precise question has been decided in this State, we are of the opinion that, as a matter of law, the payment of a check may be countermanded by means of telegraphic notice.

It is urged by counsel for the appellant that the

business of the latter as a bank was so great and so complex that it did not have time, between the receipt of the telegram and the certification of the check, to act upon the notice. The telegram was received by the bank eleven minutes before 3 o'clock and the check was certified between 10 and 11 o'clock the next morning. The paying teller testified that stop-payment notices would be sent to him until 4 o'clock in the afternoon. It also appears, from the testimony of the paying teller, that such matters were attended to very expeditiously and only took, at most, 5 minutes; that to telephone or send a messenger from the head bookkeeper's department to the paying teller would take very little time under any circumstances. It does not seem reasonable, as against the rights of the appellee, to give much weight to the argument that, as the appellant had about 7,000 depositors, 16 bookkeepers and 275 employees taking care of the receipts and payment of checks, and handled between 40,000 and 50,000 checks or items each day, the appellant was therefore entitled, in order to be affected by the notice of countermand, to more time than elapsed between 2:49 p. m. of one day and 10 o'clock a. m. of the next. It may be a question whether the order to suspend payment takes effect immediately upon physical receipt of the notice; but that it is not necessary here to decide, as we are of the opinion that the evidence sufficiently proves that the appellant received the telegram in ample time to stop payment before the check was presented for certification.

We have considered the other contentions of counsel (1) as to "Osburn" and "Ozburn" being *idem sonans* and (2) as to certain evidence being inadmissible, and find them untenable.

Finding no error in the record the judgment is affirmed.

*Affirmed.*