W. J. MURRAY, Superintendent of Banking, Appellant, v. AMERICAN SAVINGS BANK, Appellee.

PAUL J. FISHER, Receiver, Appellant, v. BENJAMIN KATZ, Intervener, Appellee.

**BILLS AND NOTES: Check Does Not Work Assignment.** The mere
1 drawing and delivery of a check does not, as against the drawee bank, operate as an assignment of any part of the funds in the bank to the credit of the drawer.

**BILLS AND NOTES: Checks—Nonduty to Present for Acceptance or**
2 **Certification.** A check is not a bill of exchange, within the mean-

ing of Secs. 3060-a132 *et seq.,* Code Supp., 1913, providing for written acceptance by the drawee.

**BILLS AND NOTES:  Payment—What Constitutes Tender.**  The debtor of a bank who offers to pay his debt (1) by the application of his own bank deposit, and (2) by the application of the check of a third party (to which no objection was made), thereby accomplishes a complete *tender of payment,* and deprives the bank of the right to bring action on the debt; and the subsequent insolvency of the bank while the tender is being kept good does not enlarge the right of the bank or of its receiver.

*Appeal from Woodbury District Court.*—ROBERT H. MUNGER, Judge.

FEBRUARY 12, 1924.

APPELLANT Fisher is receiver of the American Savings Bank, an insolvent.  In the receivership proceeding, the intervener, Benjamin Katz, filed a petition of intervention, praying equitable relief.  The trial court granted the relief prayed, and the receiver has appealed.—*Affirmed.*

*Kindig, McGill, Stewart & Hatfield,* for appellant.

*Milchrist, Jepson, Pitkin & Jepson,* for appellee.

EVANS, J.—I.  At the close of business November 4, 1921, the American Savings Bank closed its doors and suspended its business.  By appropriate proceeding, Paul J. Fisher was appointed its receiver.  Among the assets of the insolvent bank is a note for $500, executed by the intervener, Benjamin Katz.  At and before the time of suspension, Katz had a deposit in the insolvent bank to his credit in the amount of $115.50.  He also held a check of $386.49 drawn to him as payee by Samuel Katz, upon the insolvent bank as drawee.  Samuel Katz had a deposit to his credit in such bank of $690.  On November 4, 1921, while the bank was open and transacting business as a going concern, this intervener presented himself at the bank counter, for the purpose of paying his $500 note.  He so informed the bank official, and presented the Samuel Katz check for that purpose.  The bank

cashier advised him that he was too busy on that date, and asked him to come in on a later date. On the following day, the intervener again presented himself at the bank doors, only to find that they were closed. The appellant as receiver demanded of the intervener the full payment of his $500 note, and was refusing to allow him a set-off thereon, either by reason of the Samuel Katz check held by him or by reason of his own deposit account. The petition of intervener was in two counts. Under the first count, the intervener prayed that he be allowed a set-off against his note, to the amount of the Samuel Katz check held by him. Under the second count he prayed a set-off against the note to the amount of his own deposit account. Upon the hearing in the trial court, the receiver conceded the set-off claimed in the second count: that is, the amount of the intervener's deposit in the bank. The first count was contested by the receiver, and issue was made by demurrer to the petition of intervention. The argument of appellant is predicated upon the Negotiable Instruments Act, and primarily upon Section 3060-a189, Code Supplement, 1913, which is as follows:

"Sec. 3060-a189. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

The argument is that, inasmuch as the check in question was not accepted *in writing* by the bank, the bank had not become in any manner liable thereon. The theory of this argument is that the bank remained liable as debtor to Samuel Katz for $690, and that Samuel Katz would become entitled only to his pro-rata dividends, on the same basis as any other creditor.

On the other hand, the argument for the appellee is that the long standing rule established by many precedents in this state is that the issuance of a check against a deposit in a drawee bank is deemed a *pro tanto* assignment to the amount of the check. That this was the rule in this state, as pronounced in many cases prior to the adoption of the Negotiable Instruments Act, is conceded. These cases are still relied on by the appellee. It is further contended by the appellee that since the adoption of the Negotiable Instruments Act we have adhered to our former precedents, and that the rule is now what it was before, and

consequently that a check of itself *does* operate as an assignment *pro tanto* of the funds to the credit of the drawer in the drawee bank. Our later cases relied on by appellee are: *Bloom v. Winthrop St. Bank,* 121 Iowa 101; *Kuhnes v. Cahill,* 128 Iowa 594; *Hove v. Stanhope St. Bank,* 138 Iowa 39; *McClain & Norvet v. Torkelson,* 187 Iowa 202.

For reasons to be presently stated, we reach the conclusion that the decree entered below should be affirmed. But, in order to avoid possible misunderstanding, we take the precaution to say that the argument of appellee in support of the decree below is not tenable. The first two cases above cited as relied on, though decided after the enactment of the Negotiable Instruments Act, are not in point, because predicated in each case upon facts which arose *before* the enactment of the Negotiable Instruments Act. The third case relied on, *Hove v. Stanhope St. Bank,* is not in point because the "check *of itself*" was not relied on as working an assignment. The check was only one circumstance in relation thereto. There was a purported transfer of the deposit slip, and in addition to that a purported oral assignment. The last cited case relied on, *McClain & Norvet v. Torkelson,* contains language which might be construed as sustaining the position of the appellee to a qualified extent. All that was *decided* in that case, however, was that Section 3060-a189 of the Negotiable Instruments Act would not operate in favor of the garnisher of the drawee bank as against a check holder, where the interest of the bank itself was in no manner affected. Whatever was said therein that went beyond this decided point was dictum only.

*Dolph v. Cross,* 153 Iowa 289, is another case where we sustained the right of the check holder to priority over a garnisher of the drawee bank. Such holding was not predicated upon the "check of itself," but upon facts and circumstances attending the particular deposit which rendered the same a special deposit, and which created equities in favor of the check holder which were not affected by the operation of the Negotiable Instruments Act. The issuance of the check in that case was only one item of the evidence which established the equity. The fair purport and tendency of our cited cases, especially that of *Hove v. Stanhope St. Bank* and *McClain & Norvet v. Torkel-*

*son,* is to say that the Negotiable Instruments Act operates only in reference to the negotiability of instruments,. and .only as between the parties to the instruments, whether drawer or payee or assignee or drawee. In Section 3060-a189, the drawee bank is specifically named as the party to be protected against liability under the operation of the rule there stated. In all our prior cases decided since the enactment of the act, the defeated party has been either a garnisher or other person not a party to the check. In the case before us; the party defeated in the court below is the drawee bank, which comes within the specific provision of Section 3060-a189. The decree in effect found the drawee bank liable. Manifestly, therefore, if the decree can be sustained, it must be upon some other ground than that the check issued by Samuel Katz operated of itself as an assignment. Indeed, as against the drawee bank, we hold that it would not. For a review of our cases on that subject, see Iowa Law Bulletin, November, 1923, page 64. We proceed, therefore, to a statement of the ground upon which we sustain the decree.

II. Counsel for appellant have built their argument upon the proposition that the drawee bank cannot be rendered liable to the holder of a check except by a written acceptance or certification thereof. This proposition is predicated upon Section 3060-a132 *et seq.* of the act. Though it be true that a check is classified under the generic term of bill of exchange, it is, nevertheless, in a special class by itself, and is specifically defined by Section 3060-a185 as follows:

2. BILLS AND NOTES: checks: nonduty to present for acceptance or certification.

"A check is a bill of exchange drawn on a bank payable on demand."

It will be seen that the distinctive characteristics of a check, as distinguished from an ordinary bill of exchange, are that it is always drawn on a *bank* as drawee, against funds on deposit, and is always payable on *demand.* Those sections of the Negotiable Instruments Act which pertain to acceptance and presentment for acceptance (Sections 3060-a132 to 3060-a151, inclusive) have no application to a *check,* as defined by Section 3060-a185. The holder of a check owes no duty to the drawer or to intervening holders and indorsers to present such check to.the drawee bank *for acceptance or certification.* On the con-

trary, he is under the implied duty not to do so. If he does obtain the certification or acceptance of a check by the drawee bank, he destroys its character as a check, and releases all other parties thereto, including the drawer. The effect of the acceptance or certification of a check is to create a new contract between the holder of the check and the drawee bank alone. Sections 3060-a187 and 3060-a188.

The duty of the holder of a check to the drawer and to previous holders and indorsers is to present it to the drawee bank for *payment;* and such is the full measure of his duty. The presentment of such a check to the drawee bank casts a duty upon such drawee. Its undertaking with its depositor as a drawer of checks was that it would pay his checks when presented, provided that the depositor maintained a deposit adequate to such payment.

If no more appeared in the record than that the holder presented the check for payment on November 4th, and that the bank had adequate funds of the drawer for its payment, the question would still remain whether the breach by the drawee bank of the obligation owed to the drawer as depositor created any right of action in favor of the holder of the check. But it further appears that the holder of the check was debtor to the drawee bank upon a promissory note, and that he appeared at the bank with the check for the purpose of paying his note. The facts pleaded amount, in legal effect, to a tender of payment of his note. A tender of payment by a check or draft is as effective as a tender of currency, unless there be objection by the creditor to such check or draft as a part of the tender. No such objection was made in this case. The check was, in fact, good, in that the drawer had on deposit with the drawee bank sufficient funds to pay the same. We see nothing wanting herein to a complete and effective tender of the payment of this note. The cashier of the bank asked the indulgence of the debtor because of a present pressure of business, and asked him to return on a later day. What was the present effect of such tender? For some purposes, it was the equivalent of payment. Though the note still remained as an asset of the bank, the tender destroyed its right of action thereon. As long as such tender was kept good, the

3. BILLS AND NOTES: payment: what constitutes tender.

bank could not sue upon its note. It had a right only to accept the pending tender. The intervener kept his tender good by returning the next morning, according to the request of the cashier. He has pressed his tender ever since upon the receiver, and is pressing it by this suit.

We hold that, when the bank closed its doors, the tender was in effect, and the bank had no right of action upon the note. Its rights were not enlarged by the insolvency or receivership proceedings. We reach the conclusion, therefore, that the right of the intervener, as check holder and as debtor, to apply the check upon the payment of his note was fully matured by his tender on November 4th, before the bank closed its doors. The decree of the district court is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.