UNION STATE BANK OF LANCASTER and another, Appellants, vs. PEOPLES STATE BANK OF LANCASTER in liquidation, and another, Respondents.

*November 11, 1926—January 13, 1927.*

*Banks: Transacting business while insolvent: Drafts given for cash: Crediting its own checks to account of depositor: Moneys received through fraud: Recovery if traceable into existing fund: Check or draft as equitable assignment: Liquidation of insolvent bank by commissioner of banking: Preferred claims: Failure to designate claim as preferred.*

1. Where claims against an insolvent bank were pleaded in the petitions as claims alleged to be preferred and the answers recognized them as such, and the commissioner of banking rejected them as preferred but allowed them as general claims, the claimants are not barred from asserting a preference because one claim was not expressly asserted as a preferred claim when filed. p. 31.

2. The issuing of a draft by one bank for cash advanced by another bank was a representation by the drawer bank that it was then solvent and had an account at the drawee bank sufficient to meet the draft when presented within a proper business course of time. p. 32.

3. A deposit to the credit of a customer at the counter of a bank of a check drawn on such bank is the equivalent, in legal view, to the bank passing the cash to the customer and the passing back of the cash for deposit and credit. p. 33.

4. Generally, one whose funds have been taken through fraud or received as a trust fund may have equitable relief to reclaim them, where they can be sufficiently traced to and identified in some other existing fund or property. p. 34.

5. Where the defendant bank, at a time when its officers knew it to be insolvent, and fifteen minutes before closing, received cash from another bank, for which it gave its draft on a third bank, the trust fund was sufficiently traced into cash in the vaults of the receiving bank on the following morning, when it came into possession of the commissioner of banking, and was recoverable as a preferred claim. p. 34.

6. The bank having received funds fifteen minutes before closing, when it was known to be insolvent, payments made after the acceptance of the funds are presumed to have been made out

of funds other than those so received and which were impressed with a trust.   p. 34.

7. But moneys received by the defendant bank and which could not be traced into funds of the bank when the commissioner of banking assumed charge two days later, cannot be recovered as a preferred claim.   p. 35.

8. Under secs. 118.02 and 118.65, Stats., the mere giving of drafts drawn by the defendant bank on an out-of-town bank to the plaintiff bank in clearing check transactions or for cash received did not operate as an equitable assignment of funds against which drafts were drawn as between the plaintiff and defendant banks, and created no trust in favor of the plaintiff entitling it to a preferred claim against funds coming into the hands of the banking commissioner.   p. 38.

[9. Whether there can be, by express or implied agreement to that effect, as between the immediate parties to a draft or check, a valid equitable assignment of funds in the hands of the drawee, not determined.]   p. 39.

APPEAL from a judgment of the circuit court for Grant county: S. E. SMALLEY, Circuit Judge. *Modified and affirmed.*

The two plaintiffs, after the disallowance by the defendant commissioner of banking as preferences of their respective claims in the insolvency proceedings of the defendant bank, commenced separate actions which for convenience were tried as one, and one judgment entered. The three banks were located at Lancaster, Wisconsin, and will hereinafter be referred to as the *Union, Lancaster,* and *Peoples.* For some time prior to May 31, 1923, the *Peoples* was insolvent and so known to be to the principal officers in charge of the same and responsible for such condition.

There is no substantial dispute as to the facts concerning the material parts of the transactions here involved and which are as follows:

On Thursday, May 31st, in the forenoon, the *Union,* at the request of the *Peoples,* gave to the latter $1,000 cash and took in lieu thereof a draft for that amount by the *Peoples*

on the First Wisconsin National Bank of Milwaukee, hereinafter referred to as the Milwaukee bank.

At the close of banking hours Thursday and in accordance with the established custom, the *Union* presents to the *Peoples* checks aggregating $2,422.11 drawn on the *Peoples* and cashed by the *Union,* and to that amount in excess of any checks on that day drawn on the *Union* and paid by the *Peoples,* receiving a draft for that sum by the *Peoples* on the National City Bank of Chicago, hereinafter called the Chicago bank. The *Lancaster* similarly presented checks aggregating $153.85 and received the *Peoples'* draft on the Milwaukee bank for such sum.

On Friday, June 1st, at about 3:45 p. m. the *Lancaster* advanced $1,000 cash to the *Peoples* at its request and received a draft for that sum on the Milwaukee bank.

Similar clearance check transactions as those of the preceding day were had by the *Union* and the *Lancaster* taking drafts on the Milwaukee bank for the respective amounts of $1,196.81 and $530.20. At 4 p. m. the *Peoples* closed its doors and they were not reopened. The drafts above recited were forwarded in due course of mail to the Chicago and Milwaukee banks and all received on or prior to June 2d.

On Saturday, June 2d, the affairs of the bank were taken over by the banking commissioner, who remained in charge thereafter and who in the forenoon notified by telegrams the Milwaukee and Chicago banks of the situation. There came into the hands of the banking commissioner on Saturday morning cash aggregating over $2,400. On June 2d there was, according to the books of the Milwaukee bank, an aggregate of $3,153.33 in favor of the *Peoples* and subject to its drafts, except as such deposit was, pursuant to the terms of a prior guaranty for some $35,000, subject to be applied by the Milwaukee bank on account of any outstanding indebtedness due or not due, and pursuant to such express right and its conceded right it did apply the said balance on

account of the obligations of the *Peoples* to it.    There was only $692.12 to the credit of the *Peoples* with the Chicago bank at the time of the drawing of the draft for $2,422.11 aforesaid on May 31st, and such amount and no more was subsequently paid over by the Chicago bank to the commissioner of banking and became a part of the funds in his hands.

The plaintiffs with a number of others filed claims under the statute with the commissioner of banking and there were asserted as preferred claims, including those of the two plaintiffs, amounts of over $13,000.    These were all disallowed as preferred claims but allowed as general claims, which aggregate over $258,000.    Some $30,000 cash was in the hands of the defendant commissioner at the time of the trial.

The plaintiffs were the only ones of the claimants asserting to be preferred creditors who, within the time limited, brought actions to establish theirs as preferred claims.

Findings were made of the facts as above recited and others, and the trial court held that as to all the transactions between the plaintiffs and *Peoples* there was but the relationship of debtor and creditor and no trust relationship created, and for that reason granted judgment dismissing the respective complaints with costs.

From such judgment plaintiffs appeal.

For the appellants there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *A. W. Kopp.*

*Harry E. Carthew* of Lancaster, for the respondent Commissioner of Banking.

ESCHWEILER, J.    Respondents claim that the two plaintiffs cannot be heard to assert preferences for want of proper procedure.    One such claim expressly recited that it was filed as a preferred claim in the proceedings before the commissioner of banking, the other did not so expressly recite.

Both such, however, were evidently treated as preferred claims and were rejected by the commissioner of banking expressly designating them as preferred claims. They were pleaded as such in the respective complaints and recognized as such by the answers. This contention, therefore, cannot be upheld.

If the trial court was correct in holding that the transactions between the two plaintiffs and the defendant bank created merely the relationship of debtor and creditor, the judgment of course must be affirmed. Appellants assert that there was a trust relationship and such a sufficient tracing of the funds to create a preference for some, if not all, of the transactions.

That the relationship between a bank and its ordinary depositors is that of debtor and creditor is not questioned, but no such relationship was created here in any of the several matters. Neither plaintiff maintained, so far as the record shows, an account as a depositor with the *Peoples*. In none of the transactions did either take the promissory note of the *Peoples,* its check, cashier's check, or certificate of deposit, but took and relied only upon the respective drafts upon other banking institutions. The issuing of the several drafts by the *Peoples* was, in effect, a representation that it was then solvent and had an account at each of the drawee banks sufficient to meet the same when presented within a proper business course of time, as these were. To this may be cited *Hyland v. Roe,* 111 Wis. 361, 87 N. W. 252; *Whitcomb v. Carpenter,* 134 Iowa, 227, 111 N. W. 825; *St. Louis-San Francisco R. Co. v. Millspaugh* (Mo. App.) 278 S. W. 786; L. R. A. 1916 C, 21; *Steele v. Commissioner of Banks,* 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1203.

At the time of the issuing of these drafts the *Peoples* was, as known to its officers personally conducting these transactions, completely and hopelessly insolvent as that term is

recognized.   See *Ellis v. State,* 138 Wis. 513, 534, 119 N. W. 1110. In so issuing the drafts there was a violation of the statute, sec. 343.401, which prohibits, under penalty, the giving of a draft upon a bank with knowledge by the drawer that there are not sufficient funds in or credit with such bank for its payment.   If, on the other hand, it were to be considered as in the nature of a deposit by the two plaintiffs, with the *Peoples* thereby creating the creditor and debtor relationship, then there was clearly a violation of the still more severe penal statute (sec. 348.19) against the officers, cashiers, or others of a bank fraudulently receiving deposits knowing of the insolvency of such bank.   This latter statute was passed upon in such cases as *In re Koetting,* 90 Wis. 166, 62 N. W. 622; *State v. Shove,* 96 Wis. 1, 70 N. W. 312.

Under any view, therefore, of the situation there was a palpable violation by the officers of the bank of one or more provisions of the penal statutes, and it thereby necessarily follows that there was a fraud committed as against the plaintiffs. *Hyland v. Roe,* 111 Wis. 361, 365, 87 N. W. 252, so holds, pointing out the clear and necessary distinction between transactions by an individual in his private business and those with banks subject to such rigid statutory conditions (p. 366). The other authorities cited with this case above are also here in point.

This court has already adopted the doctrine that the deposit to the credit of the customer at the counter of the bank of one of its own checks is the exact equivalent, in legal view, to the bank passing to its customer the cash and the passing the cash back for deposit and credit.   It was so held in *Ellis v. State,* 138 Wis. 513, 531, 119 N. W. 1110; and so held as to the bank's own certificate of deposit in *State v. Shove,* 96 Wis. 1, 9, 70 N. W. 312.   The *Ellis Case, supra,* is discussed and approved in *State v. Ostby* (Iowa) 210 N. W

934. The same rule is recognized elsewhere. *Hawaiian Pineapple Co. v. Browne,* 69 Mont. 140, 220 Pac. 1114; *Goodyear T. & R. Co. v. Hanover State Bank,* 109 Kan. 772, 204 Pac. 992; *Kesl v. Hanover State Bank,* 109 Kan. 776, 204 Pac. 994; *Northwestern L. Co. v. Scandinavian Am. Bank,* 130 Wash. 33, 225 Pac. 825; *State Nat. Bank v. First Nat. Bank,* 124 Ark. 531, 187 S. W. 673.

The general rule is that one whose funds have been taken through such fraud or were received as a trust fund may have equitable relief to reclaim them where they can be sufficiently traced to and identified in some other existing fund or property. *Whalen v. Schumacher,* 176 Wis. 441, 448, 187 N. W. 169; *Brovan v. Kyle,* 166 Wis. 347, 350, 165 N. W. 382; *Lambert v. State Bank,* 179 Wis. 359, 363, 191 N. W. 555; *Truelsch v. Miller,* 186 Wis. 239, 259, 202 N. W. 352. See authorities just above cited and *Blummer v. Scandinavian Am. St. Bank* (Minn.) 210 N. W. 865; *Webb v. Newhall,* 274 Pa. St. 135, 117 Atl. 793, 26 A. L. R. 1; *Hudspeth v. Union T. & S. Bank,* 196 Iowa, 706, 195 N. W. 378; *Cassidy v. Uhlmann,* 170 N. Y. 505, 515, 516, 63 N. E. 554; *Cragie v. Hadley,* 99 N. Y. 131, 1 N. E. 537; *St. Louis & S. F. R. Co. v. Johnston,* 133 U. S. 566, 576, 10 Sup. Ct. 390.

Fifteen minutes before the closing time on Friday afternoon the *Peoples* received from the *Lancaster* $1,000 cash over the counter, giving therefor its draft on the Milwaukee bank. Saturday morning there was some $2,400 in cash at the bank.

Under the record as here presented, we deem the conclusion necessary and proper that such identical $1,000 was on hand and a part of the $2,400 in its vaults the next morning. Were there payments made by the *Peoples* between 3:45 and 4 p. m. of Friday, the presumption would be that such payments were made out of other than funds impressed with such a trust. *Emigh v. Earling,* 134 Wis. 565, 573, 115

N. W. 128. As to this particular fund we think the *Lancaster* has sufficiently traced and identified its money into and in the fund received by the banking commissioner and is entitled to have its claim for that amount declared a preferred claim and paid as such.

As to the $1,000 similarly placed with the *Peoples* by the *Union* on Thursday no similar contention is now presented, nor, under the evidence, could it well be asserted that such $1,000 was in specie in the bank Saturday, and the right to recover for such as a preferred claim must be denied.

The appellants assert that by the giving of the respective drafts there was an equitable assignment between the respective plaintiff banks and the *Peoples* of the funds then to the credit of the *Peoples* in the Milwaukee and Chicago banks; that is, the $3,000 and over to the credit of the *Peoples* on the Milwaukee bank's books on Saturday morning and the $692.12 in the Chicago bank.

The solution of this problem depends largely upon the construction of, and effect to be given to, the Uniform Negotiable Instruments Law adopted in this state in 1899. The provisions involved are:

Sec. 118.02 "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof and the drawee is not liable on the bill unless and until he accepts the same."

Sec. 118.65 "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Prior to the adoption of those two sections in the Uniform Law it was held that a check for a valuable consideration is a contract between the maker and payee which cannot be revoked (except for fraud or other good cause), and is an assignment of the fund *pro tanto* as between the two. *Raesser v. Nat. Exch. Bank,* 112 Wis. 591, 593, 599, 88 N. W. 618, 56 L. R. A. 174, 88 Am. St. Rep. 979; *Pease v. Landauer,*

63 Wis. 20, 22 N. W. 847. The checks involved in the *Raesser Case,* however, were given prior to adoption of the sections *supra* of the Negotiable Instruments Law, and, the liability of the bank alone being involved, no decision was necessary upon the precise question now presented.

The same rule has been held as to assignments of debts or choses in action (other than drafts or checks), however informal the act so distinctly appropriating the fund may be; so held as to judgments in *Cowie v. Nat. Exch. Bank,* 147 Wis. 124, 128, 132 N. W. 900; as to rents in *Baillie v. Stephenson,* 95 Wis. 500, 502, 70 N. W. 660. In *Skobis v. Ferge,* 102 Wis. 122, 78 N. W. 426, this question of equitable assignment of a fund as between the direct parties thereto, involving a fund held by the regents of the University for building purposes, was fully considered, and it was determined that such fund could not, without the consent of the regents, be split up by several assignments (p. 132); and it was there pointed out that such a situation is quite different from one involving the relationship arising out of the very nature of the business carried on by a banker who, perhaps, may be held bound in advance, through custom, to recognize a splitting up of a fund by checks (p. 131).

This proposition that a debt cannot be split up by several assignments without the consent of the debtor in situations other than those involving the peculiar business of banking is further illustrated in *Thiel v. John Week L. Co.* 137 Wis. 272, 276, 118 N. W. 802, 129 Am. St. Rep. 1064, and *Cook v. Menasha,* 103 Wis. 6, 9, 79 N. W. 26, followed in *Joint School Dist. v. Marathon County Bank,* 187 Wis. 416, 421, 204 N. W. 471. See, also, 2 Ruling Case Law, 619, 636.

The rule in this state of checks being equitable assignments between the maker and payee, as shown in the above cited cases, was contrary to the rule in many other jurisdic-

tions: *Fourth Street Nat. Bank v. Yardley,* 165 U. S. 634, 17 Sup. Ct. 439 (although this case notes an important distinction hereinafter mentioned) ; *Salem Trust Co. v. Manufacturers' Finance Co.* 264 U. S. 182, 194, 44 Sup. Ct. 266; the rule was *contra* in New York, as is pointed out in *Samuels v. E. F. Drew & Co.* 296 Fed. 882, citing *Equitable Trust Co. v. Keene,* 232 N. Y. 290, 133 N. E. 894, 19 A. L. R. 1137. That under the federal rule, until accepted or paid, a check is revocable as is pointed out by HAND, J., in *In re Gubelman,* 13 Fed. (2d) 732, 734, and does not operate as an equitable assignment, yet he also says that "there is respectable authority to the contrary." See, also, *Murray v. American Savings Bank,* 197 Iowa, 318, 197 N. W. 69.

The question is now presented, therefore, whether or not the two sections above cited—that neither check nor bill is a liability of the person against whom drawn until accepted— were intended, in our legislative adoption of the Uniform Instruments Law, to alter and overturn the doctrine, so firmly established in this state, as between the immediate parties.

From the expressions of other courts on the same provisions of this law as elsewhere adopted, it seems to be generally recognized that such uniform code provisions are primarily for the protection of the bank or person against whom the instrument is drawn, rather than as intending to affect the relationship between the immediate parties. It is so said as to checks in *Elgin v. Gross-Kelly & Co.* 20 N. M. 450, 150 Pac. 922, L. R. A. 1916 A, 711. In *McClain & Norvet v. Torkelson,* 187 Iowa, 202, 174 N. W. 42, numerous authorities are reviewed, and it is there held that such does not affect the drawer of such an instrument and that as to him it still amounts to an assignment, citing 2 Daniel, Neg. Inst. § 1634, and holding that a payment by other than the bank of deposit amounts to an equitable assignment.

To the contrary are such cases as *Eastman Kodak Co. v. National Park Bank,* 231 Fed. 320, based upon the New York law, and holding that a bank is not liable to the holder except upon its acceptance or certifying. *Dahl & Penne, Inc. v. State Bank,* 110 Oreg. 68, 222 Pac. 1090, declaring the relationship between the banker and customer to be that of debtor and creditor, and that under their law the giving of a check is not an assignment of the fund so far as the bank is concerned. The adoption of this uniform code provision was held to change the former rule in Illinois (*Ozburn v. Corn Exch. Nat. Bank,* 208 Ill. App. 155, and *People v. Munday,* 293 Ill. 191, 127 N. E. 364), so far as concerns the bank on which the check was drawn.

In *Dunlap v. Commercial Nat. Bank,* 50 Cal. App. 476, 195 Pac. 688, however, it was held that the statute did not prevent the showing of an intention between the maker and the payee that there should be such an assignment though the instrument alone would not be sufficient. Somewhat to the same effect is *San Antonio Nat. Bank v. Conn* (Tex. Civ. App.) 237 S. W. 353; and *People's Nat. Bank v. Swift,* 134 Tenn. 175, 183 South. 725, also recognizes the right of the parties by specific agreement to make such an appropriation and that it will be binding on the bank if brought to its notice, and calls attention to the holding in *Fourth St. Nat. Bank v. Yardley,* 165 U. S. 634, 644, 653, 17 Sup. Ct. 439, *supra,* that such an understanding and agreement between the parties may be carried out in equity as against the drawer of the check, mere volunteers, and parties charged with notice.

There being such a conflict of authorities as to whether or not the two provisions of the Uniform Negotiable Instruments Law, secs. 118.02 and 118.65, *supra,* affect the relationship of the immediate parties as well as the bank or person on whom such are drawn, we deem it sufficient for the purposes of this case to now determine that the mere giving

of the checks or drafts by the *Peoples* on the Chicago and Milwaukee banks in the clearing check transactions did not, and this by force of said statutes, operate as an equitable assignment of the respective funds against which such checks or drafts were drawn as between the banks here, plaintiffs and defendant. There being here an absence of any express or specific agreement to the effect that such an equitable assignment should arise, the condition recognized and pointed out in the cases cited on that point *supra* is not present. There being, therefore, no equitable assignment as between the direct parties to such checks, there was no trust created in favor of either of the plaintiff banks by the giving of such drafts against the funds in the Milwaukee or Chicago banks, or funds coming to the commissioner of banking on his taking possession June 2d, or by the subsequent payment to him of the $692 by the Chicago bank.

We are not now determining, because the question is not before us, whether there can be, by express or implied agreement to that effect, as between the maker or drawer of a check, bill, or draft a valid equitable assignment of funds in the hands of some bank or third person on whom such instrument is drawn.

It follows that the plaintiff *Lancaster State Bank* is entitled to have recognized as a preferred claim and to be paid in full the $1,000 given by it to the *Peoples Bank* on the evening prior to its closing its doors, and to that extent the judgment below must be modified. In all other respects the judgment below dismissing the claims of the plaintiffs must be affirmed.

*By the Court.*—Judgment below modified so as to allow as preferred the claim of the *Lancaster Bank* for $1,000, in all other respects to be affirmed. The appellant *Union State Bank* to pay the clerk's fees on this appeal; no other costs to be allowed any party.